NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CONTAINER CORPORATION OF AMERICA, Respondent.

No. 79–1596.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1981.

Decided May 18, 1981.

---

Elliott Moore, Deputy Associate Gen. Counsel, Mendelsohn McLean, N. L. R. B., Washington, D. C., Emil C. Farkas, Director, Region 9, N. L. R. B., Cincinnati, Ohio, for petitioner.

Willis S. Ryza/Edward B. Miller, Marc A. Dornfeld/Matthew R. McArthur, Pope, Ballard, Shepard & Fowle, Chicago, Ill., for respondent.

Before EDWARDS, Chief Judge, BOYCE F. MARTIN, Jr., Circuit Judge, and ENSLEN, District Judge.*

## PER CURIAM.

The National Labor Relations Board petitions for enforcement of an order requiring Container Corporation of America to cease its unfair labor practices under section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.* The company cross-petitions for review of the NLRB's determination that it violated the Act by threatening to discipline an employee if he continued to post anti-management notices on the company's bulletin board. An individual charge brought by Union Vice President Young, alleging that the company had unlawfully threatened him if he refused to agree with changes in the employee break system, has been consolidated with the charge of Local 4018 United Paperworkers International Union, AFL–CIO.

The controversy between the Union and the company began when the Union Vice President posted on the company bulletin board a newsletter written by the Union President. This notice criticized the manner in which the company was processing grievances. The company claims it also contained virulent *ad hominem* attacks on the plant's General Manager. The notice alleged that management had treated employees in a "disgraceful manner," and announced the Union's intention to resist further unfair management behavior. It also criticized the General Manager and implied that he was a slave driver, and stated that "he expects more and more sq. (sic) footage from the 'chain gang' with nothing in return."

---

* Honorable Richard S. Enslen, United States District Judge for the Western District of Michigan, sitting by designation.

After the General Manager saw the notice, he consulted the company's industrial relations advisor. He then called the Union President and told him he found the notice abusive, insulting, disruptive, and violative of the negotiated contract provision which allowed notices to be posted which related to "official union business." The General Manager announced that he would remove the letter from the board. Nevertheless, the notice reappeared the next day and was removed again. The General Manager then called a meeting with the Union Vice President and other Union committeemen during which he read aloud the relevant contract clause, reiterated his opinion of the notice, and threatened to suspend the Vice President if the notice reappeared on the board. The Vice President did not replace the notice and the Union filed charges with the NLRB against the company.

After a hearing on the charges, the Administrative Law Judge found that the "newsletter" was "official union business" within the meaning of the contract. The ALJ also found that the posting of notices was a statutorily protected activity because the company had given the Union a contractual right to use the board. He also found that the contents of the notice deserved the Act's protection because the remarks against management were not "egregious." Based on these facts, the ALJ determined that the company violated section 8(a)(1) of the Act. The NLRB modified these findings and found that, although the Union had no *statutory* right to use the bulletin board, nevertheless an employer who has permitted union access to a company board, either by formal rule or practice, may not then remove notices or discriminate against an employee who posts notices which the company finds distasteful.

■ As an initial matter, we agree that the NLRB properly exercised its discretion under section 10(a) of the Act in refusing to defer to arbitration in this dispute. The determinative issue on appeal centers on the uncoerced exercise of employee rights under section 7 of the Act, rather than on construction of an ambiguous contract pro-

vision. *See General American Transportation Co.*, 228 N.L.R.B. 808 (1977).

The company attempts to justify the General Manager's actions and remarks by pointing to an historical company practice of removing propagandistic notices from the board which tended to create dissension, demean management, or ridicule personnel. Such notices were removed by the company during negotiations in 1969, 1971, and 1973. The company contends that the NLRB erroneously ignored this history.

■ The record reveals that the Union and the company fought a contracts battle on the bulletin board during their 1968 negotiations. By *mutual* agreement, the bulletin board was eliminated as a battleground. We agree with the ALJ that this agreement was limited to those particular contract negotiations and does not carry over to the instant controversy as a waiver of the Union's right to post notices relating to union business. Ample uncontradicted evidence supports the finding that employees were allowed to post personal notices, none of which related to employment, without censorship or company supervision. The Union President testified that "questions" had arisen about letters posted on the board in the past, but to his knowledge the company had never removed any notices. He also testified that he intended to convey to union members by his letter, the company's attitude towards the Union and its committee. Based on these facts, we see no reason to disturb the finding that the contents of the letter related to "official union business," namely, the grievance procedure and the Union President's perception of the company's attitude towards grievance steps.

■ Similarly, we agree with the ALJ's determination, adopted by the NLRB, that the remarks in the notice were not sufficiently egregious to fall outside the protection of section 7. Union rhetoric is protected by federal law even if it is "abusive" or "insulting." *National Association of Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974). The record is barren of evidence to contradict the ALJ's

view that the posted notice had no greater disruptive potential than literature distributed outside the plant. Accordingly, the company cannot justify removing the notice from the board on the basis that its contents were disruptive or unpleasant.

We turn now to discuss the individual charge that alleged that the company threatened Vice President Young and threatened to "make it hard" on union members. The NLRB found, in deciding the individual charge, that Mr. Grundy, a plant manager in training, coerced Vice President Young in the exercise of his section 7 rights and thereby violated section 8(a)(1).

Young testified that Grundy had stated to him that Grundy had visited one of the company's plants in which employees' first grievances were "placed in a desk drawer," and that subsequent grievances resulted in dismissals. Young also testified that Grundy intimated to him that the retiring plant manager "could make it hard" on union members. Grundy denied having made any such statements directly to Young. Rather, he testified that he had merely joked with other management personnel in the cafeteria and told them about the grievance remark which had been made by another plant manager, reputed to be a "character." Grundy testified that Young may have overheard this remark.

Young's testimony was uncorroborated. However, the record does contain evidence to support Grundy's testimony that Young disliked him because of a dispute over issuing warnings to employees, and that Young had threatened "to get" Grundy, the very day before he filed his charge against the company based on Grundy's alleged statement. After Grundy issued the disputed warnings, Young filed the charge, a full month after Grundy allegedly threatened him.

■ Viewing the record as a whole, we do not find substantial evidence to support the ALJ's credibility findings. He fully credited Young's testimony, a highly interested witness, although this testimony was not supported by other evidence. The un-corroborated testimony of an interested charging party does not amount to substantial evidence of an unfair labor practice. *N.L.R.B. v. Otsego Ski Club-Hidden Valley, Inc.*, 542 F.2d 18 (6th Cir. 1976). *See also N.L.R.B. v. Elias Bros. Big Boy, Inc.*, 327 F.2d 421 (6th Cir. 1964). Young testified that Grundy never threatened him personally. In light of Young's inability to recall with specificity the conversations in which Grundy allegedly made the challenged statements, we cannot say that substantial evidence supports the ALJ's and the NLRB's findings on this issue.

Accordingly, the NLRB's order is enforced in part and denied enforcement in part.