**UNION CARBIDE CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–1234.

United States Court of Appeals, Sixth Circuit.

Argued May 19, 1983.

Decided Aug. 16, 1983.

---

E.H. Rayson (argued), Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, Tenn., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Howard Perlstein (argued), National Labor Relations Board, Washington, D.C., for respondent.

Before EDWARDS, Chief Judge, and LIVELY and KRUPANSKY, Circuit Judges.

KRUPANSKY, Circuit Judge.

The Union Carbide Corporation has petitioned for review of an order entered against it by the National Labor Relations Board. 259 N.L.R.B. 130 (1982). 29 U.S.C. § 160(f). The Board has cross-petitioned for enforcement of that order. 29 U.S.C. §§ 160(e), (f).

Pursuant to contracts with a federal agency, the Union Carbide Corporation operates three substantial government-owned research and production facilities located in the Oak Ridge, Tennessee area. The three facilities are identified as "Y–12", which is comprised of 325 buildings on 500 acres, "K–25", which has 753 buildings on 1,740 acres, and the "ORNL" facility, with 176 units on a plot of nearly 3,000 acres. Each facility has unique purposes, functions and management; accordingly, collective bargaining is accomplished on a facility-inclusive basis and the hourly workers at these plants are represented by some twenty separate unions.

The Oak Ridge area facilities together employ approximately 11,000 salaried workers, none of whom are represented by a union. The record reflects that since at least 1968, these salaried employees have been the targets of successive unsuccessful organization campaigns. The within dispute results from a particularly aggressive representation campaign directed at the salaried group, launched by the charging party, the Office and Professional Employees International Union, AFL–CIO (OPEIU/Union), at a time when two other unions were also seeking to organize some or all of the same 11,000 Oak Ridge salaried workers. The Union charged, and the Board concluded, that during the course of the competition for representation, the Company committed six violations of the Labor Management Relations Act. 29 U.S.C. § 141 et seq. Specifically, the Board

**660**

discerned violations of section 8, 29 U.S.C. section 158, and section 7, 29 U.S.C. section 157, in the following actions: [1]

1. Removal of an OPEIU notice from a Y–12 bulletin board;
2. Confiscation of OPEIU notices from an employee;
3. Alleged statements by management portending the loss of benefits should the Union be approved;
4. Confiscation of a "Taxpayer's Petition";
5. A memorandum offering employees "protection" from pressure to join the Union; and,
6. The allegedly retaliatory punishment of an employee active in the organizational drive.

The Board also determined that the Union Carbide Corporation's "no-solicitation" rule was overbroad and, because it tended to restrict employee union activity it was invalid. Union Carbide challenged the Board's disposition of each issue. These objections are accorded appropriate and seriate treatment.

■ The judicial review provisions of the Act, section 10(e), 29 U.S.C. section 160(e), are explicit and provide that the Board's factual determinations "shall be conclusive" if, upon the entire record they are supported by substantial evidence. Evidence is substantial if it is adequate, in a reasonable mind, to uphold the decision. *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951). Application of this standard requires the Court to consider the body of evidence which opposes the Board's decision, but prohibits the Court from conducting a *de novo* review of the record. *Id.* at 488, 71 S.Ct. at 465. The

Court is further foreclosed from setting aside the agency's finding of fact if its findings were supported by substantial evidence, even though the Court may have reached a different conclusion had it originally decided the issue. *Id.; McLean Trucking Co. v. National Labor Relations Board,* 689 F.2d 605 (6th Cir.1982); *Jim Causley Pontiac v. National Labor Relations Board,* 620 F.2d 122 (6th Cir.1980). Finally, the assignment of credibility to witnesses is the prerogative of the Board. *National Labor Relations Board v. Local 212, Int'l. Union, United Auto., Aerospace and Agricultural Implement Workers of Am. (U.A.W.),* 690 F.2d 82 (6th Cir.1982).

Review of the administrative record evidenced that one Union Carbide supervisor, Paul R. Wilson (Wilson), persisted in removing OPEIU "open house" notices from a bulletin board in the Y–12 plant. While other testimony indicated that additional open house notices were removed by non-supervisory salaried personnel, there was no evidentiary support for Union Carbide's assertion that the salaried personnel who removed the OPEIU notices were partisans of the rival unions.

■ The Labor Management Relations Act does not afford employees a protectable interest in the use of an employer's bulletin board. *National Labor Relations Board v. Container Corp. of Am.,* 649 F.2d 1213 (6th Cir.1981) (per curiam). *See also Nugent Service, Inc.,* 207 N.L.R.B. 158 (1974). Nevertheless, where, by policy or practice, the company permits employee access to bulletin boards for any purpose, section 7 of the Act, 29 U.S.C. section 157, secures the employees' right to post union materials. *National Labor Relations Board v. Challenge—Cook Bros. of Ohio, Inc.,* 374 F.2d

1. The relevant sections of the act, sections 8(a)(1), (3), 29 U.S.C. § 158(a)(1)(3), and section 7, 29 U.S.C. § 157, provide:

§ 158 *Unfair labor practices*
(a) It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
\* \* \* \* \* \*

(3) by discrimination in regard to ... any term or condition of employment to encourage or discourage membership in any labor organization....
§ 157 *Right of employees as to organization*
Employees shall have the right to self-organization, to form, join or assist labor organizations, ... and to engage in other concerted activities for the purpose of ... mutual aid or protection ....

147 (6th Cir.1967). *Cf. N.L.R.B. v. Container Corp., supra* (enforcing N.L.R.B. decision which held that although there was no statutory right to use the bulletin board, once an employer permitted access to a company board, it could not thereafter remove notices or discriminate against an employee who posted union notices). The content of such notices is protected by the Act even if abusive and insulting. *Old Dominion Branch No. 496, National Ass'n of Letter Carriers, AFL–CIO v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *N.L.R.B. v. Container Corp.,* 649 F.2d at 1215. Notwithstanding the foregoing, however, is the employer's legitimate property interests and concern for the maintenance of order; accordingly, where the bulletin boards threaten to become a "battleground for competing groups", regulation of the posted materials is proper. *See Nugent Services, Inc.* To hold otherwise would "be unduly prejudicial to the company's property and management rights." *Id.*

■ Instantly, the record does not support Union Carbide's assertion that the bulletin boards were becoming "a battleground between rival employee factions". Moreover, the evidence demonstrated that Wilson was in no way concerned about the effects of the representation competition, but, rather, the notices were removed merely because OPEIU had not been recognized as the bargaining agent for the salaried workers. Wilson's premise was therefore an illegitimate one. "No restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline." *National Labor Relations Board v. Babcock & Wilcox Co.,* 351 U.S. 105, 113, 76 S.Ct. 679, 685, 100 L.Ed. 975 (1956). The employee right to "discuss self-organization" extends to the posting of notices on company bulletin boards where, as here, the company had waived its right of exclusive control over the medium. *See N.L.R.B. v. Container Corp., supra.*

Accordingly, insofar as the within use of the bulletin boards to post notices of the campaigning union's open house events did not infringe on any legitimate company concern, the Board's order in this regard will be enforced.

■ The second issue in contention herein also involved supervisor Wilson. At the hearing, employee Jerry Peddicord (Peddicord) testified that he had placed a packet of approximately twenty-five OPEIU notices, of the type which Wilson had removed from the bulletin boards, in a desk drawer used by several employees. Subsequently, he discovered that within hours of his placing the packet in the drawer, it had been removed. Later that same day, Peddicord while retrieving a tool from Wilson's desk found the notices in Wilson's desk drawer. (The ALJ found that Peddicord identified the notices from the unique manner in which he had folded them.) Wilson later denied taking the notices, but admitted they were in his possession. Wilson did not testify at the administrative hearing and, while Peddicord's testimony was uncorroborated, it was also uncontradicted. The Board further found Peddicord's testimony to be credible. Accordingly, the ALJ concluded "that Wilson's confiscation of Peddicord's Union notices also violated Section 8(a)(1) of the Act inasmuch as it clearly interfered with his right to possess and distribute his materials in nonwork areas on nonwork time."

Union Carbide contends that "Peddicord's circumstantial evidence is insubstantial in the face of Wilson's denial and the other evidence. Moreover, Peddicord was clearly not a disinterested witness and his unsupported conclusions should not be sufficient evidence of an unfair labor practice." Thus, Union Carbide relies on the principle that "the uncorroborated testimony of an interested charging party does not amount to substantial evidence of an unfair labor practice." *N.L.R.B. v. Container Corp.,* 649 F.2d at 1216; *National Labor Relations Board v. Ostego Ski Club-Hidden Valley, Inc.,* 542 F.2d 18, 19 (6th Cir.1976) (per curiam); *National Labor Relations Board v. Elias Bros. Big Boy, Inc.,* 327 F.2d 421 (6th Cir.1964).

The paradigmatic factual setting in which this principle has been invoked involves the testimony of an interested, charging party, who objectively has something to gain from a self-serving statement of the facts, which is directly contradicted by the testimony of disinterested witnesses; generally, in these cases the indicia of reliability are clearly weighted in favor of the contradicting witness.[2] These essential elements are absent from the case at bar.

Accordingly, because Peddicord's testimony was uncontradicted and properly found to be credible by the ALJ, the testimony is substantial evidence supporting the Board's factual determination that Wilson violated the Act by confiscating the union notices, therefore, the Board's order is upheld as to this issue.

█ Evidence relative to the alleged threat directed an employee benefits by Union Carbide management was supplied by one Diden, an employee at the Y–12 facility. The ALJ described Diden's testimony thusly:

> Diden briefly testified regarding a comment made to him by H.E. Hamilton, a dispatching supervisor, on June 25 in Diden's building at the Y–12 facility. According to Diden, Hamilton remarked that if the office employees did organize there was a possibility that they would lose their personal leave with pay and their sick leave with pay. Diden could

not recall the context in which Hamilton's remark was made or any other circumstances surrounding the statement, but explained that what he did recall "just happened to register."

> While Diden's testimony regarding Hamilton's statement is weak and suspect because of his failure to recall the context in which it was made, such testimony was not contradicted because Hamilton was not called to testify. Accordingly, and because Diden appeared to be a truthful and reliable witness, I credit Diden's testimony regarding Hamilton.

No other evidence was proffered on this issue. This Court, after review of the transcript, is disposed to agree with the ALJ's evaluation, that "Diden's testimony . . . is weak and suspect"; although Hamilton's failure to testify is itself suspect, in considering the totality of Diden's testimony, this Court concludes that, as a matter of law, it was neither logical nor reasonable to rely on this "weak and suspect" testimony as substantial evidence. *Surprenant Manufacturing Co. v. National Labor Relations Board,* 341 F.2d 756 (6th Cir.1965). Consistent herewith, that portion of the Board's order referencing any alleged threats made by Hamilton shall be denied enforcement.

Curtis Hammondtree, an employee in the mechanical department of Union Carbide's ORNL plant, was the chief steward of the union representing certain employees in

---

**2.** Union Carbide challenges the sufficiency of Peddicord's testimony as a matter of law, relying *inter alia* upon the commentary in *N.L.R.B. v. Container Corp.,* 649 F.2d at 1216, that,

> the uncorroborated testimony of an interested charging party does not amount to substantial evidence of an unfair labor practice . . . . In light of [the witnesses'] inability to recall with specificity the conversations in which [the supervisor] allegedly made the challenged statements, we cannot say that substantial evidence supports the ALJ's and the NLRB's findings on this issue.

In *Container,* the panel reviewed the totality of the record, as it was obligated to do, and found that the questioned testimony was uncertain, vague, uncorroborated and directly contradicted in the record. Moreover, the *Container* supervisor offered sufficient explanation as to the union member's motivation for the fabrication—the charging party had been heard vow-

ing "to get" the management individual the day prior to filing the charge.

Similarly, in *N.L.R.B. v. Otsego Ski Club, supra,* upon which Union Carbide also relies, the charging party had been discharged for acts of violence she was alleged to have committed at a picket line. Her testimony, that she was not present at the time the alleged violence occurred, was determined by this Court to be not substantial evidence where it was directly contradicted by independent (*i.e.,* non-management, non-union) eyewitnesses.

Compare *N.L.R.B. v. Elias Bros., supra,* where the vague and evasive testimony of a paid Union director regarding the circumstances of her discharge was uncorroborated, and further, directly refuted by the testimony of disinterested witnesses. Under those circumstances, this Court held that the Union director's testimony, alone, could not be substantial evidence.

that plant. Hammondtree testified that, pursuant to custom, he had placed a petition captioned "Taxpayer's Petition" in the lunchroom of a building at the ORNL facility. The petition contained the following language:

We, the undersigned, object to Union Carbide corporation's [sic] use of our tax dollars for anti-union activities. The United States Government is officially in favor of collective bargaining. We therefore call upon congress and the president to investigate and stop this improper use of our taxes.

Hammondtree related at the hearing that the petition remained in the lunchroom for several days before it was confiscated by John Fields, a Union Carbide supervisor.

Section 7 of the Act, 29 U.S.C. section 157, guarantees to employees the right to engage in concerted activities such as the distribution of literature. If the literature bears a sufficiently close relationship to the employees' wages and working conditions, or "otherwise [seeks to] improve their lot as employees through channels outside the immediate employee-employer relationship", *Eastex, Inc. v. National Labor Relations Board*, 437 U.S. 556, 565, 98 S.Ct. 2505, 2512, 57 L.Ed.2d 428 (1978), it is protected. "[E]mployee appeals to legislators to protect their interests as employees are within the scope" of section 7 protection. *Id.* 437 U.S. at 566, 98 S.Ct. at 2512–13. Interference with employee circulation of protected material in nonworking areas during off-duty periods is presumptively a violation of the Act unless the employer can affirmatively demonstrate the restriction is necessary to protect its proper interests. *Republic Aviation Corp. v. National Labor Relations Board*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945).

Union Carbide's position as a government contractor does not preclude its employees from issuing the type of appeal incorporated within the instant petition. Therefore, its confiscation was a violation of the Act.

As a result of complaints from fellow employees that secretary Jean Keil solicited other employees as part of her OPEIU organizing activity during working hours and on Union Carbide's phones, she was reprimanded and instructed that she was not permitted to use the employer's phone for *any* personal or union business. Subsequently, her immediate superior, recognizing that other employees were permitted reasonable use of the phones for personal business, partially relented but maintained the restriction relative to her discussing OPEIU business on the telephone.

Under these circumstances, the ALJ concluded that Union Carbide violated section 8(a)(3) of the Act by limiting Keil's "personal use of her business telephone including barring her from union discussions or solicitations." As correctly explained by the ALJ (emphasis supplied), any employer

could *unquestionably* bar its telephones to any personal use by employees, but once it grants the employees the privilege of occasional personal use of the telephone during work time . . . it could not lawfully exclude the Union as a subject of discussion . . . .

While Union Carbide forcefully contends that Keil had abused the privilege, the record fails to support the assertion. Instead the record discloses that Union Carbide's concern was directed solely to the subject matter of Keil's conversations. Keil testified that, after the initial direction barring her from conducting any personal or Union affairs over the employer's phones, her supervisor, William H. Dodson, informed her that she "could use the telephone for personal calls, *the same as I had before,* but not for union activities." Keil's testimony, which the ALJ noted was "very convincing and credible", is supported by Dodson's testimony that, "we [the company] really wanted her to continue to do [sic] the personal phone calls in pretty much the same fashion she had before the organizing effort started."

As recognized by the ALJ, Union Carbide *unquestionably* had the right to regulate and restrict employee use of company property. The Board's decision in this

case does not challenge that basic property right. Section 8(a)(3) of the Act, 29 U.S.C. section 158(a)(3), makes it an unfair labor practice for an employer to discriminate "in regard to ... *any* term or condition of employment to encourage or discourage membership in any labor organization." The statute requires proof of disparate treatment of employees in response to union activity and proof that the employer's action is likely to discourage participation in union activities. *Metropolitan Edison Co. v. National Labor Relations Board,* —— U.S. ——, ——, 103 S.Ct. 1467, 1473, 75 L.Ed.2d 387 (1983).

▮▮▮▮▮ Herein, substantial evidence demonstrated that the reprimand was delivered to Keil not because she had violated company policy, but rather, solely in response to her pro-union activities. The coercive effect of the employer's conduct in this matter was plain.[3]

Because we find substantial evidence supportive of the Board's determination that the reprimand of Keil proceeded from an anti-union animus, that portion of the order will also be enforced. *See National Labor Relations Board v. Erie Resistor Corp.,* 373 U.S. 221, 227, 83 S.Ct. 1139, 1144–45, 10 L.Ed.2d 308 (1963).

This Court has closely reviewed Union Carbide's remaining objections as presented in the briefs and by the oral argument; pursuant to careful evaluation thereof, the Court concludes that the remaining issues are without merit.

Consistent with the foregoing, the order is enforced in part and set aside in part.

---

**3.** The Court hastens to note that the holding advanced today would not prevent any employer from regulating employee use of its property and promulgating rules properly designed to protect legitimate employer interests—even where such rules and regulations might have the ancillary effect of discouraging union membership. *Cf. Metropolitan Edison Co. v. N.L. R.B.,* —— U.S. at ——, 103 S.Ct. at 1473,

("Congress ... did not intend to make unlawful all acts that might have the effect of discouraging union membership"). Where, however, an anti-union animus is shown to have motivated such rules or regulations, a violation is thus established. *Id. See National Labor Relations Board v. Brown,* 380 U.S. 278, 286–87, 85 S.Ct. 980, 985–86, 13 L.Ed.2d 839 (1965).