**ROADWAY EXPRESS, INC., Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.**

Nos. 84–6071, 85–5140.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 24, 1987.

Decided Oct. 29, 1987.

Edward C. Kaminski, James D. Kurek (Lead) (argued) Buckingham, Doolittle & Burroughs, Akron, Ohio, for petitioner, cross-respondent.

Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Collis Suzanne Stocking, Fred L. Cornnell (argued), Washington, D.C., for respondent, cross-petitioner.

Before JONES, WELLFORD and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Respondent Roadway Express appeals a supplemental decision and order of the National Labor Relations Board (NLRB or Board) finding that Roadway violated section 8(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), by removing two company-provided general purpose bulletin boards from its employee break rooms.[1] The Board cross-petitions for enforcement of its order.

International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 20 (Union), represents the hourly employees at the company's terminal in Toledo, Ohio. In accordance with its collective bargaining agreement with the Union, the company provides a glass-enclosed, locked bulletin board for the exclusive use of the Union. The company also maintains a similar glass-enclosed, locked bulletin board for its own official use. In addition, for approximately six years prior to April, 1981, the company maintained an unenclosed general purpose bulletin board in each of the two employee break rooms at its Toledo terminal.

The Company had no rules restricting the use of the two bulletin boards in the break rooms. It had no rules about what material could be posted on these boards and it did not require employees to request permission to post materials. Employees used the break room bulletin boards to post general news items, including notices of upcoming events, sales and meetings. They also posted notices of union business and events. Approximately once a month, beginning in March, 1980, employee Konstantine Petros posted on the break room bulletin boards literature advocating membership in Teamsters for a Democratic Union (TDU) and informing employees of their "legal rights and contractual rights."

In late 1979, Ivan Hofmann became the manager of the company's Toledo terminal. Thereafter, tension increased between management and the employees. Beginning in the fall of 1979 and continuing through April, 1981, the comment "Ivan sucks" and similar vulgarities began to appear frequently throughout the terminal, including on the walls, on freight cartons, and on documents posted on the break room bulletin boards.

On January 29, 1981, Petros posted notices on the break room bulletin boards regarding a January 25 resolution that was passed at the unit employees' meeting at the Union hall. The resolution expressed opposition to the company's use of production cards. It resolved that the Union expressly support a sister local in Pennsylvania in the latter's efforts to obtain a strike sanction from the International Union to

1. That section provides:
(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

stop the company's use of production cards and that the Union send a telegram to the International with "a copy to be posted at the company's terminal in Toledo, Ohio, supporting the call for a strike sanction at the company to stop the production cards." Terminal Operations Manager Paul Ray removed this notice from the outbound break room bulletin board later the same day, instructing Petros that the break room bulletin board "was to be for official company business." Petros pointed out that the other (inbound) break room bulletin board had nonofficial items posted on it, and Ray replied that the inbound break room bulletin board "was for us to use as we saw fit." Petros appealed Ray's removal of the notice to Assistant Terminal Manager Dean Schuler, who told Petros that "both bulletin boards were company bulletin boards and should be used only for official company business." The next day, Petros asked Ray if he could post any TDU material on the bulletin board. Ray said no, referring to Schuler's statement the day before.

On February 27, 1981, Petros filed an unfair labor practice charge alleging that the company violated section 8(a)(1) of the Act by its removal of the notice. Petros subsequently withdrew the charge in late April on the basis of what he testified was an agreement by the company that he could post TDU material as long as it was clearly identified as such. During the period between the company's removal of the notice from the bulletin board and Petros' late April withdrawal of the unfair labor practice charge, he posted no union or TDU material.

On April 23, 1981, Petros posted notices on the break room bulletin boards advocating defeat of a proposal to amend the Union's bylaws. He then informed Terminal Operations Manager Ray that he had posted these notices in accordance with what Petros understood to be the recent agreement permitting the posting of clearly marked TDU material on the break room bulletin boards. Ray told Petros that he was unaware of any such agreement.

On April 25, 1981, Terminal Manager Ivan Hofmann visited one of the break rooms. He testified that he saw a piece of newspaper clipping on the bulletin board, and stated: "That was a clipping about a homicide with a supervisor or an employer was shot and killed as a result of a labor dispute and under there it said 'Ivan you're next.' It infuriated me at the time. I took it and grabbed it and threw it down." (App. 157). After consulting with an attorney, Hofmann testified that he ordered the bulletin boards to be removed. When Petros noticed that the break room bulletin boards had been removed, he asked Hofmann why. According to Petros:

[H]e stated to me that he had to have free speech. Also, that he's a stockholder in the company and he's tired of seeing things that said bad things about the company and also he didn't want to see things calling for strikes against Roadway Express and this is just like putting these items in his house.... He also stated to the effect that he didn't like the idea of seeing things like "Ivan sucks" and "Ivan you're next."

(App. 120–121). Hofmann's own testimony was that:

I told [Petros] ... "We have to allow for freedom of speech. I am a stockholder in the company and I find it very objectionable when individuals post notices for unauthorized strikes against my company, when they write inflammatory remarks about myself, about the supervisors that work for the company. I feel it is no different than it would be if they walk into my home and post these same things in my house and since we can't restrict the content, the general content on the bulletin boards in that manner that I had no alternative but to remove it and I felt that was the last straw that broke the camel's back is when they posted the one making the statement that I was next to be shot and I found that very objectionable and it was after that time I had them removed."

(App. 165–166).

On these facts, the Board found, in agreement with the administrative law judge, that the company violated section 8(a)(1) of the Act by removing the break

room bulletin boards because an employee had posted "TDU and general union material" on those boards. The company filed with this court a petition for review, and the Board filed a cross-petition for enforcement. Subsequently, the Board petitioned this court to remand the case to allow the Board to reconsider its decision in light of *Lawson Co. v. NLRB*, 753 F.2d 471 (6th Cir.1985) (where an employer's motive is relevant to whether it has violated section 8(a)(1) of the Act, the Board must apply the analysis set forth in *Wright Line*, 251 N.L.R.B. 1083 (1980), *enf'd on other grounds*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982)). This court granted the motion for remand. On April 15, 1986, the Board issued the supplemental decision and order now under review.

Pursuant to our directive, the Board applied the *Wright Line* test for evaluating cases alleging violations of section 8(a)(1) turning on the motive of the employer. The Board noted that the General Counsel must make a prima facie showing sufficient to support the inference that protected conduct was a motivating factor in the employer's decision to take the allegedly unlawful action. If the General Counsel makes such a prima facie showing, the burden of going forward with the evidence shifts to the employer to show that it would have taken the same action even in the absence of the protected conduct. 251 N.L.R.B. at 1085.

The Board first found that the General Counsel had made a prima facie showing that protected conduct—the posting of TDU and general union material on the break room bulletin boards—was a motivating factor in the company's decision to remove the bulletin boards. Specifically, the Board noted first that Petros' January 29 notice advocating a strike sanction in protest of the company's use of production cards was immediately removed from the break room bulletin boards by Terminal Operations Manager Ray, who told Petros, contrary to six years' past practice, that the break room bulletin boards were for official company business only. In addition, the next day, Ray specifically denied

Petros permission to post TDU material on the break room bulletin boards. Moreover, the Board noted that the bulletin boards were removed almost immediately following Petros' resumption of his posting of union and TDU material. Finally, the Board indicated that Plant Manager Hofmann referred specifically to the January 29 notice in explaining to Petros why the bulletin boards had been taken down. Accordingly, the Board found that the General Counsel had established a prima facie case that the company removed the break room bulletin boards because it wanted to prohibit the posting of union and TDU material.

The Board further found that the company failed to establish that it would have removed the break room bulletin boards even in the absence of the posting of union and TDU material on them. Although the company asserted that it removed the boards to stop the publication of disparaging and threatening remarks aimed at Terminal Manager Hofmann, the Board noted that the posting of such disparaging remarks had been commonplace throughout the plant since late 1979, including on the break room bulletin boards, and it was not until the day of the January 29 strike notice that the company limited the boards to "official company business only." Moreover, the company did not actually remove the bulletin boards until shortly after Petros resumed posting TDU material on them. The Board concluded that the company would not have taken down the bulletin boards were it not for the continued posting of union and TDU related material on the bulletin boards. Accordingly, the Board found that the company's removal of the bulletin boards was in violation of section 8(a)(1) of the Act.

The company challenges both of the Board's findings; that is, the company denies that it removed the bulletin board to prevent the posting of TDU or other union materials, and asserts that it would have removed the bulletin boards regardless of the union materials posted, simply to prevent the continued posting of offensive materials attacking management personnel.

Our standard of review is well settled. A reviewing court may not disturb the Board's findings of fact where there is substantial evidence on the record considered as a whole to support the Board's findings. 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Nevertheless, the Board's findings must be set aside when the record demonstrates that its decision is not "justified by a fair estimate of the worth of the testimony of witnesses" or by the Board's "informed judgment on matters within its special competence or both." *Id.* at 490, 71 S.Ct. at 466. When there is a conflict in the testimony, "it is the Board's function to resolve questions of fact and credibility," and thus this court ordinarily will not disturb credibility evaluations by an ALJ who observed the witnesses' demeanor. *NLRB v. Baja's Place*, 733 F.2d 416, 421 (6th Cir.1984).

The Board's application of the law to the particular facts is also reviewed under the substantial evidence standard, and the Board's reasonable inferences may not be displaced on review even though the court might justifiably have reached a different conclusion had the matter been before it *de novo*. *NLRB v. United Insurance Co.*, 390 U.S. 254, 260, 88 S.Ct. 988, 991–92, 19 L.Ed.2d 1083 (1968). Evidence is considered substantial if it is adequate, in a reasonable mind, to uphold the decision. *Universal Camera*, 340 U.S. at 477, 71 S.Ct. at 459. Thus, we consider the evidence contrary to the Board's conclusions, but may not conduct *de novo* review of the record. *Union Carbide Corp. v. NLRB*, 714 F.2d 657, 660 (6th Cir.1983). If the Board errs in determining the proper legal standards, however, we may refuse enforcement on the grounds that the order has "no reasonable basis in law." *Ford Motor Company v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979).

The company first submits that the coincidental removal of the break room bulletin boards two days after Petros posted TDU material is insufficient to establish a prima facie violation of section 8(a)(1). Roadway argues that the notice removed from the bulletin boards in January was not identified as TDU material, and that management removed it from the board under the belief that it belonged on the Union's enclosed bulletin board. Likewise, Roadway argues that Hofmann's comment, when asked about removing the boards, to the effect that he did not like to see notices calling for illegal strikes against the company, cannot be interpreted as an objection specifically to TDU materials.

 While the evidence in support of the Board's finding cannot be characterized as overwhelming, there is substantial evidence on the record as a whole to support its conclusion of illegal motive on the part of Roadway. There is evidence that immediately after Petros' January 19 notice urging support for union strike action to protest a company work rule, the company announced it would no longer permit Petros to post TDU materials on the bulletin boards, and that within two days of his next posting concerning intra-union matters, Terminal Manager Hofmann ordered that the break room boards be removed. Rather than simply being coincidental, the timing of an employer's actions can constitute persuasive evidence of illegal motive. *Birch Run Welding & Fabricating, Inc. v. NLRB*, 761 F.2d 1175, 1180 (6th Cir.1985). Moreover, Hofmann's comment regarding the removal of the boards, and his reference to unauthorized strikes, can only be interpreted to refer to the TDU material calling for such a strike. While Roadway asserts that Hofmann was unaware that the notice was TDU material, since it was unmarked, the actual sponsor of the material is irrelevant. The notice was clearly union-related material and, accordingly, as protected under the Act. Thus, Hofmann's comment indicates that he was motivated, at least in part, by the fact that union related materials had been posted.

Roadway also asserts that it established a legitimate motive for the removal of the bulletin boards and, therefore, removal would have occurred even in the absence of the posting of any TDU material. Roadway points to the offensive and insulting materials which appeared on the board, and

argues that it had the right to prevent the posting of such items by removing the boards.

We certainly agree that Roadway had a legitimate business reason to prevent the posting of the offensive items. However, under the *Wright Line* test, Roadway had the burden to prove by a preponderance of the evidence that it would have removed the bulletin boards without regard to Petros' protected activity of posting union materials. Although we might have come to a different conclusion had we decided this case in the first instance, we cannot say that the Board's finding to the contrary was in error. While the Board found the company's reaction to these postings understandably hostile, it was convinced by the timing of the company's initial limiting of the bulletin boards to "official company business only" immediately following the January 29 "strike" posting, along with the company's subsequent removal of the boards shortly after the resumption of TDU postings on April 23, and Hofmann's reference to TDU material in explaining the removal of the boards, that the company would not have taken down the bulletin boards were it not for the continued posting of union related materials. Accordingly, there was substantial evidence to support the Board's conclusion.

The company next asserts that the removal of the bulletin boards did not violate any rights of the employees. Roadway points out that Petros and other employees were never prevented from or restricted in disseminating TDU or union materials. Accordingly, Roadway concludes that there has been no violation of the Act.

It is true that employees have no statutory right to use an employer's bulletin boards. *Union Carbide Corp. v. NLRB,* 714 F.2d 657, 660 (6th Cir.1983). Nevertheless, where by policy or practice, the company permits employee access to bulletin boards for any purpose, section 7 of the Act, 29 U.S.C. § 157, secures the employees' right to post union materials. *Id.* Similarly, although an employee may have no right initially to utilize a bulletin board, if the employer is motivated by anti-union

sentiment in removing the board, a violation of the Act occurs. *Southern Maryland Hospital Center v. NLRB,* 801 F.2d 666, 670 (4th Cir.1986). Moreover, it is well established that the availability of other channels of communication does not justify employer restraint of employees' section 7 rights. *Helton v. NLRB,* 656 F.2d 883, 896 (D.C.Cir.1981). Consequently, Roadway's argument that the removal of the boards did not deprive its employees of any rights must be rejected.

Finally, Roadway objects to the notice ordered to be posted by the Board. Specifically, Roadway complains about the following paragraph:

WE WILL replace the bulletin board in each of our employees' breakrooms, expressly permitting the posting of TDU or any other Union-related material.

The company argues that it is not required to provide a bulletin board for Union matters, since it already provides one to Local 20 pursuant to contract, and since the employees have other methods of disseminating information. Furthermore, Roadway asserts that the notice is improper because it requires Roadway to specifically acknowledge that it will permit the posting of TDU material, thus giving a dissident group within the Teamsters Union the rights and privileges afforded a labor organization.

Our understanding of the Board's order is that the break room bulletin boards must be replaced only because they were removed with anti-union animus. However, this does not mean that the company must, in spite of the scurrilous materials which appear on the board, maintain in perpetuity bulletin boards for general employee use. Likewise, it does not mean that the company may not change its policy with regard to the bulletin boards, i.e., requiring company approval before items are posted, as long as the company does not discriminate against protected items. In fact, were the employee abuse of the bulletin boards to continue, we do not think that the Board's ruling in this instance would prevent the company again from removing the bulletin boards, provided it was

not motivated by anti-union animus. Even the petitioner acknowledges that the Board's order does not prohibit the company from taking any lawfully motivated action in the future.

■ As for the company's complaint that the Board's required order raises TDU to the status of a labor organization, we would simply note that the Board's order appears tailored to the specific situation at hand, and is consistent with the principles of the Act. *NLRB v. Seven–Up Bottling of Miami, Inc.*, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953). Accordingly, the order of the NLRB will be enforced.

WELLFORD, Circuit Judge, dissenting.

This is not a case of the employer's rejecting posting of union notices. Rather it involves the authority of an employer to defeat the misuse and abuse of bulletin boards maintained by Roadway Express for intended general legitimate use of its employees. Roadway Express proferred a reasonable and justifiable basis for its action in this case to preclude disparagements and direct threats to its terminal manager in charge of the employer's operation. Throughout this dispute a bulletin board has been maintained for Teamsters Local No. 20. No one has even contended on behalf of the bargaining agent for Roadway Express employees that the respondent company has attempted to stop it from using a bulletin board for union purposes. I would find that there is no substantial evidence to support an unfair labor practice charge under these circumstances.

Two facts are particularly persuasive to me. The first is that when the first notice supporting a strike was placed on the disputed board by a leader in a dissident group, it was removed by Roadway Express and given to a Teamsters local business agent to be placed on the union bulletin board. It was not identified as TDU material and appeared to be union material. This was, then, not an effort to prevent posting of what appeared to be union related or union sponsored material. Also, two days before the bulletin boards in question were taken down, a second posting, dealing with union bylaws, was placed on the boards in question by a dissident TDU leader. The boards were not, nor was this notice, however, removed until several days later when threatening material appeared on the bulletin board.

These facts, among others, demonstrate to me that Roadway Express was not engaged in any malevolent effort to keep TDU or Teamsters material from being posted in its terminal. It is being found guilty of an unfair labor practice because it tried to keep insulting, derogatory, or threatening material from continuing to be put in its terminal. There is no real dispute but that the explanation given by the terminal manager for removing the boards was that, while he recognized a right to free speech, he was tired of seeing, and found it very objectionable to see the general purpose bulletin boards being used to foment an unauthorized strike and to inflame workers by use of insulting and threatening materials.

With the background at the time of discharging employees for firing into company supervisors' cars, it seems clear that the reason given by the terminal manager for removing the boards was not pretextual anti-union conduct but a reasonable and immediate response to an abuse that really had nothing to do with preventing a union and its members from posting union material at Roadway Express. There was no showing the Teamster's Local 20 had prevented non-threatening TDU material from being posted on its board. Nothing was ever removed from the union board. I accordingly dissent, because I would deny enforcement under these circumstances.