**COMPUWARE CORPORATION, Petitioner/ Cross-Respondent,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent/ Cross-Petitioner.**

Nos. 96–6225, 96–6338.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 20, 1997.

Decided Jan. 28, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied March 13, 1998.

Ernest R. Bazzana (argued and briefed), Plunkett & Cooney, Detroit, MI, for Petitioner/Cross–Respondent.

Deborah E. Shrager (argued and briefed), Linda Dreeben (briefed), Aileen A. Arm-

strong, Deputy Associate Gen. Counsel (briefed), National Labor Relations Board, Appellate Court Branch, Washington, DC, for Respondent/Cross–Petitioner.

Before: MERRITT, MOORE, and BRIGHT *, Circuit Judges.

## OPINION

BRIGHT, Circuit Judge.

Compuware Corporation ("Compuware") discharged its employee Laurence Schillinger ("Schillinger") at the request of Compuware's client, KPMG Peat Marwick ("Peat Marwick"), because Schillinger threatened to complain about Compuware's employment practices to the State of Michigan ("the State"). Peat Marwick had obtained a contract from the State to upgrade the State's computer system. The discharge led to an unfair labor practice charge against Compuware under section 8(a)(1) and (3) of the National Labor Relations Act (29 U.S.C. § 158(a)(1) and (3)) ("the Act"). Following an administrative hearing, the administrative law judge ("ALJ") found Compuware had discharged Schillinger in violation of section 8(a)(1) of the Act and recommended that Compuware offer Schillinger reinstatement and back pay. The Board affirmed the ALJ's ruling, *Compuware Corp. and Laurence Schillinger*, 320 NLRB 101, 1995 WL 789963 (1995), and thereafter rejected Compuware's motion for reconsideration, Case 7–CA–36731, order dated August 27, 1996. In essence, the Board's decision determined that Schillinger had engaged in protected concerted activity in raising employee concerns with the employer and that his threat to raise those concerns with the State of Michigan did not justify the discharge.

Compuware filed a petition for review and the National Labor Relations Board cross-applied for enforcement of the Board's order. We reject Compuware's petition for review and enforce the Board's order. Our review of the record as a whole demonstrates that the Board's order is supported by substantial evidence.

## I. BACKGROUND

The State awarded Peat Marwick, an accounting firm, a contract to upgrade the State's computer system. Peat Marwick then contracted with Compuware, headquartered in Farmington Hills, Michigan, to furnish support personnel to train the State's employees on the new computer system. The training took place in the Knapp Building in Lansing, Michigan, some distance from Compuware's headquarters.

Laurence Schillinger, the charging party, began working in a temporary trainer position for Compuware in early July 1994. Schillinger discussed work-related problems with other employees from the very beginning of his employment. On August 22, 1994, Compuware terminated Schillinger from the State project at the direction of Peat Marwick. Peat Marwick decided to remove Schillinger because Schillinger had threatened on August 19, 1994 to approach the State with work-related concerns, in violation of a Peat Marwick work rule. Tr. at 147–49, 273–78.[1]

Compuware, in its petition for review, contends that the ALJ's decision adopted by the Board is incorrect as a matter of law and fact. Although Compuware raises several issues in this appeal,[2] we will focus primarily

* The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
1. "Tr." refers to the transcript of the proceeding before the ALJ on June 12, 1995 and June 13, 1995 which is set forth in a single volume that is paginated consecutively.
2. In its petition for review, Compuware raised the following issues: (1) whether the ALJ erred in finding that Schillinger had engaged in concerted activity; (2) whether the ALJ erred when he failed to address the issue of employer knowledge as an element required to be proven by the

Board; (3) whether the ALJ erred in his conclusion that Peat Marwick was not entitled to promulgate a work rule which prohibits employee communication of work-related concerns with Peat Marwick's client; (4) whether the ALJ erred when he failed to balance Peat Marwick's work rule against any incidental effect on employee rights under the Act; (5) whether the ALJ erred in finding that an ongoing labor dispute is not required to justify employees approaching third parties with work-related complaints, and in finding that an ongoing labor dispute was present in this case; (6) whether the ALJ erred in failing to address the issue of whether Schilling-

on the issue orally argued by Compuware, which is whether substantial evidence supports the Board's finding that Schillinger engaged in concerted activity, rather than merely his own concerns. We will discuss briefly Compuware's other issues.

## II. DISCUSSION

■ Section 8(a)(1) of the Act makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7]. . . ." 29 U.S.C. § 158(a)(1). Section 7 of the Act guarantees employees the right to engage in "concerted activities" not only for self-organization, but also "for the purpose of . . . mutual aid or protection. . . ." 29 U.S.C. § 157. The broad protection of section 7 includes protecting unorganized employees who need to speak for themselves as best they can. *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14, 82 S.Ct. 1099, 1102–03, 8 L.Ed.2d 298 (1962).

■■ The Board's determination that an employee engaged in protected concerted activity is entitled to great deference.[3] *Dayton Typographic Serv., Inc. v. NLRB*, 778 F.2d 1188, 1191 (6th Cir.1985). The Board's findings are entitled to affirmance if supported by substantial evidence in the record as a whole, and we may not reverse such a finding even if this panel "would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

er's discharge was motivated by or substantially based upon his participation in alleged protected activity; (7) whether the ALJ erred in holding Compuware responsible for the actions of Peat Marwick; and (8) whether the remedy ordered by the ALJ was inappropriate, does not effectuate the purposes of the Act and is not justified by the record. The Board adopted as its own with minor modifications the decision by the ALJ, including rulings, findings, and conclusions.

3. In *NLRB v. Webcor Packaging, Inc.*, 118 F.3d 1115 (6th Cir.1997), we articulated that the standard of review under *Holly Farms* is that if Congress has not spoken on an issue, the Board is entitled to deference so long as its interpretation of the Act is a reasonable one. *Id.* at 1119 (citing *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996)). This

## A. Concerted Activity

Compuware argues that Schillinger's actions fall outside the protection of section 7 because his activity was not concerted. Compuware contends that although Schillinger's concerns may have been shared by other coworkers, no evidence indicates that any coworker authorized Schillinger to represent them. Compuware argues that without such authorization, Schillinger's actions would not constitute concerted activity.

■ Specific authorization is not needed to show "concerted activity." *See NLRB v. Lloyd A. Fry Roofing Co.*, 651 F.2d 442, 445 (6th Cir.1981) ("It is not necessary that the individual employee be appointed or nominated by other employees to represent their interests."); *Dayton Typographic Serv.*, 778 F.2d at 1191; *NLRB v. Guernsey–Muskingum Elec. Coop., Inc.*, 285 F.2d 8, 12 (6th Cir.1960). Rather, conduct of an individual employee may be considered "concerted activity" if the employee's actions are "made on behalf of other employees or at least . . . made with the object of inducing or preparing for group action. . . ." *Aro, Inc. v. NLRB*, 596 F.2d 713, 718 (6th Cir.1979). Activity is concerted "if it is related to group action for the mutual aid or protection of other employees." *Lloyd Fry Roofing*, 651 F.2d at 445. Therefore, the relevant question is whether the employee acted with the purpose of furthering group goals.

■ Comparing this case to *Manimark Corp. v. NLRB*,[4] 7 F.3d 547, 550 (6th Cir.

standard of review accords with Sixth Circuit precedent giving deference to legal determinations of the Board. *See Emery Realty, Inc. v. NLRB*, 863 F.2d 1259, 1262 (6th Cir.1988); *General Truck Drivers, Chauffeurs, Warehousemen and Helpers of Am., Local No. 957 v. NLRB*, 934 F.2d 732, 735 (6th Cir.1991).

4. In *Manimark*, this court held that employee Hurley Fields had not engaged in protected concerted activity because there was no "evidence that Fields was acting in anyone's interest but his own. . . ." *Manimark*, 7 F.3d at 551. This court noted that Fields brought up group complaints as an afterthought to a conversation concerning his commissions. This court further emphasized that "Fields' refusal to follow up on the problems by arranging a group meeting weakens his argu-

1993), Compuware argues that the Board did not show Schillinger was acting for the group. The following findings of fact made by the ALJ and adopted by the Board belie this argument:

> Schillinger testified that almost from the beginning of his employment he discussed these problems with other employees. And on the morning of August 19, Schillinger had a discussion about these matters with Master Trainer Michael Wilhite (whom the parties stipulated was an employee and not a supervisor within the meaning of Section 2(11) of the Act), at which employees Hugh Kessler and Roger Diamond [sic][5] were present. During this discussion, Schillinger became agitated and told Wilhite that if nothing satisfactory was done, he would express these concerns at a meeting scheduled that afternoon at which there would be representatives of the State as well as Peat Marwich [sic].
>
> Wilhite told Schillinger that it would be improper for him to bring up these problems at the meeting with State representatives, to which, Wilhite testified, Schillinger said, "We'll see." Wilhite called John Hess, [Compuware's] account manager for this project to report Schillinger's intent. Hess was not available and Wilhite left a voice mail message; but he also called James Michael Mutter, who at the time was the Peat Marwich [sic] on site team leader for the project.
>
> Mutter was concerned that Schillinger would in fact raise these issues with the client, and absent assurance he would not, Mutter wanted him taken off the project. Mutter and Hess testified that Peat Marwick retained the right to require [Compuware] to withdraw any employee from the project.
>
> Hess returned Wilhite's call, learned of the situation and came to the project. He talked with Schillinger and Wilhite and at Schillinger's invitation, joined several trainers for lunch to talk about various work related problems. Shortly thereafter, Hess talked to Mutter, who stated he was so concerned that Schillinger might bypass the chain of command that he was considering canceling the meeting. Mutter asked if Hess could give him assurances that Schillinger would not bring up these problems at the meeting, and when Hess could not, Mutter said he would have to find out what to do. It appears, however, though somewhat unclear, that Mutter first told Hess that Schillinger should not go to the meeting and told him to give Schillinger the rest of the day off. Then Mutter checked with his superiors and they concluded that Schillinger should be replaced, and this order came later.
>
> Saturday Hess called Schillinger and asked him to report to Hess's office on Monday, August 22. Schillinger did so and was informed by Hess that he was being terminated from the project at the direction of Peat Marwick. Since Schillinger was a temporary employee for that particular project, and, according to Hess, deemed insufficiently skilled for other jobs, he was terminated from employment with [Compuware].

*Compuware Corp. and Laurence Schillinger,* 320 NLRB 101, 102, 1995 WL 789963 (1995).

Two coworkers testified that they had not authorized Schillinger to represent their concerns to management. However, the Board's finding that Schillinger's proposed action would have been concerted is not undermined by the fact no employee specifically endorsed Schillinger's proposal to raise employees' grievances to State representatives. *See NLRB v. Parr Lance Ambulance Serv.,* 723 F.2d 575, 579 (7th Cir.1983). Therefore, the testimony of Schillinger's two coworkers is not necessarily determinative on the issue of whether Schillinger was acting on behalf of the group interests or for his own self-interest.

---

ment that he was acting on behalf of other drivers." *Id.* This court did not simply look at the group nature of the complaint. Rather, this court looked at other evidence to indicate if coworkers had decided to act upon their complaints. This court did not find evidence to indicate Fields' coworkers wanted to pursue any action.

5. The correct spelling of Roger Diamond's last name is Dymond.

Our review of other evidence from the hearing demonstrates concerted activity. We note that from the beginning of his employment, Schillinger had discussed work-related concerns with many of the thirty other trainers. Furthermore, we consider the evidence of the exchange between Schillinger and the employees on August 19 to be revealing. Roger Dymond testified that during Schillinger's argument with Wilhite on the morning of August 19, 1994, Schillinger said "he was going to speak for all of us that afternoon [at the meeting]...." Tr. at 304. In addition, Schillinger showed that he was acting on behalf of the group by facilitating a lunch discussion between managers and trainers on August 19. The employees demonstrated sharing Schillinger's interest in obtaining resolution of their grievances by attending the lunch meeting at his request. Moreover, Schillinger made it known to management and his coworkers that he had organized a labor union at a previous job and received a degree in labor relations. In fact, some of the other trainers had previously commented that because Schillinger, who had been a union steward at a former job, "knows this stuff, he should talk to the management people." Tr. at 183.

After reviewing the entire record, we conclude that the evidence regarding the morning discussion and the lunch meeting indicates that if Schillinger had attended the afternoon meeting with the State and Peat Marwick representatives, he would have restated the concerns of the trainers as a group. The evidence demonstrates that Schillinger expressed group concerns to his coworkers and management. The lunch attended by Wilhite, manager Hess and Schillinger demonstrates Schillinger's interest and effort on behalf of the group, which constitutes concerted activity. Thus, unlike the employee in *Manimark*, Schillinger acted on behalf of the group and not simply on his own behalf.

### B. Peat Marwick Work Rule

 Compuware contends that Peat Marwick's work rule prohibiting employees from complaining to its clients regarding working conditions was valid under section 7 of the Act. Compuware argues work rules are allowed when the rule is designed to protect legitimate employer interests even where there may exist an ancillary effect of discouraging participation in protected activities. *Union Carbide Corp. v. NLRB*, 714 F.2d 657, 664 n. 3 (6th Cir.1983). However, this work rule on its face does not appear to strike any sort of balance between employee rights and the legitimate concerns of Peat Marwick. An employer may not enforce a rule that improperly interferes with its employees' statutory right to engage in concerted activity. *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801–804, 65 S.Ct. 982, 987–88, 89 L.Ed. 1372 (1945). We affirm the Board's ruling that Peat Marwick cannot institute a work rule that restricts employees' ability to engage in concerted activity by prohibiting communication with third parties.

### C. Ongoing Labor Dispute

 Compuware argues that the Board erred in stating an ongoing labor dispute was not required to be protected concerted activity when that activity was going to third parties with work-related complaints. Compuware also contends the Board erred in finding that an ongoing labor dispute was present in this case. Compuware contends that no ongoing labor dispute was present because management was on the same side as the workers and was addressing the work-related problems. The Supreme Court held that a labor dispute can still exist when management begins to address employees' complaints about their working conditions. *See NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962). The Supreme Court noted that the conduct may at that point be "unnecessary and unwise" but the reasonableness of the decision to engage in concerted activity is simply "irrelevant to whether a labor dispute exists or not." *Id.* at 16, 82 S.Ct. at 1103. Substantial evidence supports the Board's findings that Schillinger and other employees were involved in a dispute over conditions of employment. Therefore, we reject Compuware's argument that no labor dispute existed.

## D. Disloyalty to Employer

 Compuware also argues that Schillinger's actions if concerted were not protected but instead were acts of disloyalty to the employer. This argument is also rejected. Employees have the right to engage in concerted communications with third parties regarding legitimate employee concerns, such as terms and conditions of employment and grievances. *Sierra Publishing Co. v. NLRB,* 889 F.2d 210, 216–17 (9th Cir.1989). An employee's appeal to a third party or in this case a client only loses its protected status if the appeal does not relate to the labor practices of the employer or are maliciously false. *Handicabs, Inc. and Ronald F. Trail,* 318 NLRB 890, 896 (1995), enforced, 95 F.3d 681, 684–85 (8th Cir.1996). If Schillinger had discussed work-related concerns with the State, the discussions, while violating Peat Marwick's work rule, would not have lost their protected status.

We agree with the Board's opinion and analysis on this issue:

The question is whether an employer can make (or as is the case here, acquiesce in) a rule that restricts employees' ability to engage in concerted activity by prohibiting communication with third parties. I conclude not. The Board has repeatedly held that employees may, with the protection of Section 7, communicate with third parties about matters relating to an ongoing labor dispute. *See The Sacramento Union,* 291 NLRB 540, 1988 WL 214195 (1988), and cases cited therein, particularly including *Emarco, Inc.,* 284 NLRB 832, 1987 WL 89746 (1987) (Chairman Dotson dissenting), and *Cordura Publications Inc.,* 280 NLRB 230, 1986 WL 53893 (1986) (Chairman Dotson dissenting), when the employees wrote to the respondent's parent company. The caveat in these cases is that the communication not be so disloyal or maliciously false to remove the employees from the protection of the Act.

The complaints here were not false. Hess agreed that there were problems along the lines complained of and that steps were being taken to correct them. There is no argument that Schillinger had made disloyal or deliberately false statements, or that there was a reasonable fear he would do so when talking to representatives of the State. The totality of [Compuware's] argument is that Peat Marwick had a rule making it inappropriate for [Compuware's] employees to take their employment concerns to "the client" and since Schillinger would not give sufficient assurance he would not do so, Peat Marwick asked that he be replaced. This resulted in Schillinger's discharge and was violative of the Act.

*Compuware Corp. and Laurence Schillinger,* 320 NLRB 101, 103, 1995 WL 789963 (1995).

## E. Responsibility of Peat Marwick for the Discharge

 Compuware argues the Board erred by holding Compuware responsible for Schillinger's discharge when the discharge was requested by its client Peat Marwick. However, Compuware was not unaware of why Peat Marwick wanted Schillinger to be discharged. In fact, Compuware knew the basis of the removal was to prevent Schillinger from communicating with Peat Marwick's client, the State, about employee grievances. In addition, a private agreement that violates statutory labor provisions is unenforceable. *See Clinch Valley Clinic Hosp. v. NLRB,* 516 F.2d 996, 998–99 (4th Cir.1975). We therefore reject this argument against enforcement of the decision.

## F. Remedy

 Compuware argues that the remedy ordered by the Board is inappropriate and not justified by the record. Compuware contends it is unlikely Schillinger would have been retained after the project because only one half of the temporary employees from the project continued to be employed and Schillinger was less qualified than most of the employees. The standard of review of a remedial order is abuse of discretion. *Taylor Warehouse Corp. v. NLRB,* 98 F.3d 892, 903 (6th Cir.1996). At this stage, the Board's decision that Schillinger should be reinstated is not an abuse of discretion as it is the normal remedy in an unlawful discharge case. *See Dean General Contractors,* 285 NLRB 573, 573 (1987). However, at the

compliance stage of the order, Compuware can further raise the issue of whether Schillinger would have been terminated at the end of the project.

### III. CONCLUSION

For the foregoing reasons, enforcement of the decision and order of the Board is **GRANTED**.