983 F.2d 1068
 142 L.R.R.M. (BNA) 2648
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SKYLINE LODGE, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 92-5061, 92-5171.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1992.
 
 Before BOGGS and SILER, Circuit Judges, and LAMBROS, Chief District Judge.*
 PER CURIAM.
 
 
 1
 This case is before us on a petition for review and cross-application for enforcement of an order of the National Labor Relations Board. Skyline Lodge contends that the Board's finding that Skyline Lodge violated section 8(a)(1) of the National Labor Relations Act (NLRA) by discharging Phyllis Delaney for engaging in protected concerted activities is not supported by substantial evidence. We enforce the Board's order in full.
 
 
 2
 * Phyllis Delaney was a dinner server at Edward's Restaurant and Lounge, operated by Skyline Lodge and located near Cincinnati, Ohio. In early November 1990, Delaney and other dinner servers discussed among themselves several concerns about employment conditions, including: the alleged unfair distribution of banquet work and other examples of favoritism by Peter Boucher, the manager; improper recording of sales and tips by attributing them to servers who were not present; and lack of support by the bus boys. After an unsuccessful attempt to present these grievances to Boucher, Delaney and others met with Gary Bradford, the corporate food and beverage director.
 
 
 3
 At the meeting, Delaney did most of the talking, expressing the above-stated grievances. Bradford promised to look into the servers' concerns and directed the servers not to discuss the matter among themselves until he got back to them. In the course of looking into the complaints, Bradford claims to have heard from kitchen help, the day supervisor, and a customer that Delaney was continuing to discuss the problems openly with employees and customers. Delaney denies that she discussed the complaints with customers. Also, the ALJ found that there was no evidence that Delaney was told not to discuss these matters with customers.
 
 
 4
 On November 19, 1990, Bradford held a second meeting, at which he reported that he found no support for the complaints except that the bus boys were goofing off. He stated that he wanted the servers to stop complaining and work cooperatively. Pointing at each individual server, he then asked each one whether she was interested in working at Edward's. All replied affirmatively. Delaney, however, qualified her affirmative response by saying, "Yes, but I don't think things are fair." She persisted in discussing the complaints.
 
 
 5
 Delaney continued talking after the meeting ended. As she was walking out the door, Bradford heard her say that the matter was not resolved and that she was going to get to the bottom of it.
 
 
 6
 Following the meeting, Bradford directed Boucher to fire Delaney as soon as possible because she was "a disruptive force in the work force ... [and he] felt that she was not going to let these matters drop." Bradford admitted that he believed that Delaney was the leader of the disgruntled workers because she did most of the talking at the meeting.
 
 
 7
 In both a telephone conversation and in person, Boucher told Delaney that she was being discharged because the busy season was approaching and they could not have a disruptive force like her. Boucher also told her, according to Delaney's uncontradicted testimony, that she was being discharged for going over his head to Bradford.
 
 
 8
 The ALJ found that Delaney's discharge violated section 8(a)(1) of the National Labor Relations Act, stating:
 
 
 9
 This is one of those rare cases where the conclusion flows from undisputed events; neither a legal nor a factual determination is required. Delaney was engaged in protected concerted activity. Respondent perceived this as being disruptive, believed that she would continue with this activity unless removed from the work force and work place, and admittedly discharged her because of her activity and the threat that she would continue it.
 
 
 10
 The Board's order required, among other things, Skyline Lodge to offer Delaney her job back, to make her whole for any loss of earnings or benefits, and to remove from its files all records of her discharge.
 
 II
 
 11
 Section 7 of the NLRA grants employees "the right to self-organization, to form, join, or assist labor organizations, ... and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...." 29 U.S.C. § 157. The protections of section 7 apply to non-unionized workers as well as unionized workers. NLRB v. Washington Aluminum Co., 370 U.S. 9, 14 (1962). In section 8(a)(1) of the NLRA, Congress made it unlawful for an employer to interfere with an employee's exercise of those rights guaranteed by section 7. 29 U.S.C. § 158(a)(1).
 
 
 12
 In NLRB v. Transportation Management Corp., 462 U.S. 393 (1983), the Supreme Court adopted the Board's analysis for determining whether an employer's discharge of an employee violates section 8(a)(1), first articulated in Wright Line, 251 N.L.R.B. 1083 (1980), enf'd, 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989 (1982). Under this analysis, the General Counsel has the burden of showing that the employee's exercise of section 7 rights was a substantial or a motivating factor in the employer's decision to discharge the employee. If the employer fails to rebut the General Counsel's argument, the employer still may avoid liability by proving by a preponderance of the evidence that the discharge was also motivated by the employee's unprotected conduct and that the employee would have been discharged even if she had not engaged in the protected conduct. Transportation Management Corp., 462 U.S. at 400.
 
 
 13
 The standard of review is well settled. We must not disturb the Board's findings of fact that are supported by substantial evidence on the record considered as a whole. Roadway Express, Inc. v. NLRB, 831 F.2d 1285, 1289 (6th Cir.1987) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). "When there is a conflict in the testimony, 'it is the Board's function to resolve questions of fact and credibility,' and thus this court ordinarily will not disturb credibility evaluations by an ALJ who observed the witnesses' demeanor." Roadway Express, Inc., 831 F.2d at 1289 (quoting NLRB v. Baja's Place, 733 F.2d 416, 421 (6th Cir.1984)).
 
 III
 
 14
 Substantial evidence supports the ALJ's finding that Delaney and her coworkers engaged in concerted activities protected by section 7 of the NLRA. Delaney and her co-workers expressed to both Bradford and Boucher their concerns about unfair distribution of banquet work and other examples of favoritism by Boucher, improper recording of sales and tips by attributing them to servers who were not present, and lack of support by the bus boys. These grievances concern matters that directly affect the terms and conditions of employment; therefore, the expression of these grievances constitutes concerted activity for the purpose of mutual aid. See Dreis & Krump Mfg. Co., Inc. v. NLRB, 544 F.2d 320, 327-28 (7th Cir.1976) (employee who, without union sponsorship, alerted fellow employees to supervisory deficiencies that affected on-the-job safety and performance was engaged in protected activity).
 
 
 15
 Substantial evidence also supports the ALJ's findings that Skyline Lodge discharged Delaney because she engaged in these protected activities and refused to quit pursuing her grievances. Bradford identified Delaney as the leader of the disgruntled employees. Bradford ordered Boucher to discharge Delaney immediately after the second meeting, at which Delaney openly refused to quit pursuing her grievances. Both Boucher and Bradford admitted that Bradford told Boucher to discharge Delaney because she was a "disruptive force." Delaney testified that Boucher told her that she was discharged for being a "disruptive force" and for going over Boucher's head with her complaints. At the hearing, Bradford testified that Delaney was discharged because she was a "disruptive force" and "was not going to let these matters drop."
 
 IV
 
 16
 As an affirmative defense, Skyline Lodge argues that even if Delaney had never engaged in the protected conduct, she would have been discharged on the basis of unprotected conduct, including 1) making disparaging remarks to customers about management; 2) engaging in a "yelling match" with fellow employees; and 3) making slanderous comments about Boucher. Skyline Lodge's arguments are not persuasive. Skyline Lodge argues that when management told Delaney that she was discharged for being a "disruptive force," it was referring to the above unprotected conduct and not her protected conduct. In a footnote to its decision and order adopting the ALJ's findings, the Board specifically addressed Skyline Lodge's contention that this is a "dual motive" case. The Board found that there is no evidence in the record that Delaney even engaged in these unprotected activities. Moreover, the Board found that Skyline Lodge presented no evidence that Delaney's alleged unprotected conduct was a motivating factor in her discharge. After careful review of the record, we are convinced that substantial evidence supports the Board's findings that this is not a "dual motive" case and that Skyline Lodge discharged Delaney because she was engaged in protected activity.
 
 V
 
 17
 For the foregoing reasons, we DENY Skyline Lodge's petition for review and ENFORCE the Board's order in full.
 
 
 
 *
 Thomas D. Lambros, Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation