**NEPHI RUBBER PRODUCTS CORP., a Cypher-Jones Company, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 91-9541.

United States Court of Appeals, Tenth Circuit.

Oct. 9, 1992.

Thomas D. MacMullen of MacMullen & Associates, Pittsburgh, Pa., for petitioner.

Claude Francke, (Jerry M. Hunter, General Counsel; D. Randall Frye, Acting Deputy General Counsel; Aileen A. Armstrong, Deputy Associate General Counsel; Howard E. Perlstein, Supervisory Atty., with him on the brief), N.L.R.B., Washington, D.C., for respondent.

Before LOGAN, SETH and SNEED,* Circuit Judges.

LOGAN, Circuit Judge.

Nephi Rubber Products Corp., a Cypher–Jones company (Cypher–Jones), petitions for review of a National Labor Relations Board (Board) decision holding that Cypher–Jones is a successor employer to Nephi Rubber Products, Inc., a Bastian Industries company (Bastian), for purposes of union recognition and negotiation. Jurisdiction in this court is proper under 29 U.S.C. § 160(f).

I

The Nephi Rubber Products plant, owned at various times by different corporations, has been the principal employer in Nephi, Utah, for many years. In August 1984, the plant, then owned by Bastian, ceased operations and laid off its entire production workforce.[1] In the same month, the con-

---

* The Honorable Joseph T. Sneed, Senior United States Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. A skeleton crew continued to ship inventory and maintain the plant grounds.

tract expired between Bastian and Local 948 of the United Rubber Workers International, which had represented the employees at the Nephi plant since 1972. After unsuccessfully attempting to satisfy its creditors, Bastian filed for bankruptcy under Chapter 11 in October 1984.

Because of its importance to the town, the local community began to explore how to reopen the plant. With the assistance of professors and graduate students from Brigham Young University, former plant employees examined the possibility of purchasing and operating the plant through an Employee Stock Ownership Plan (ESOP). Although the leaders of the ESOP were able to obtain authorization for a $700,000 grant from the Department of Health and Human Services, they never obtained sufficient financing for the purchase.

In the interim, several outside companies had considered purchasing the plant, but none did so. By the summer of 1985, only the ESOP and Cypher–Jones, a venture formed by two former customers of Bastian, had expressed a desire to purchase and reopen the plant. In October 1985, with the equipment in the plant tagged for an impending auction, the bankruptcy court approved the sale of Bastian's assets to Cypher–Jones, denying the ESOP's request for a delay to seek additional financing.

Cypher–Jones reopened the plant in late December 1985, hiring back many of Bastian's former employees. At the outset, the manufacturing operations under Cypher–Jones were substantially similar to those under Bastian, but Cypher–Jones hired back fewer employees and attempted to cross-train some employees to enable them to perform two or more jobs.

In April 1986, Local 948 requested that Cypher–Jones recognize and bargain with it as the authorized representative of Cypher–Jones' employees. At that time, Cypher–Jones had a work force of fifty-three employees, fifty of whom were former Bastian employees.[2] By the end of 1986, fifty-

eight of sixty-three Cypher–Jones employees were former employees of Bastian. When Cypher–Jones did not respond to the union's request the union filed charges with the Board, claiming that as a successor employer to Bastian, Cypher–Jones was violating sections 8(a)(1) and (5) of the Labor Management Relations Act of 1947, 29 U.S.C. § 158(a)(1), (5), by failing to recognize and negotiate with the union.

After a five-day hearing, the administrative law judge (ALJ) ruled that, although the nature of the employment at Cypher–Jones was substantially similar to that at Bastian, the sixteen-month hiatus of operations and the intervening bankruptcy prevented a finding of successorship. Both Cypher–Jones and the General Counsel of the Board filed exceptions to the ruling, and the full Board rejected the decision of the ALJ, holding that "the instability and uncertainty during the period before [Cypher–Jones] reopened the plant do not negate our finding that, once the plant reopened and employees were put back to work, they found their job situation basically the same as before." *Nephi Rubber Prods. Corp.*, 303 N.L.R.B. No. 19, at 7 (May 29, 1991). Cypher–Jones has petitioned for review of that ruling in this court.[3]

## II

The Board's factual findings will be affirmed "if they are supported by substantial evidence in the record considered as a whole." *Monfort, Inc. v. NLRB*, 965 F.2d 1538, 1540 (10th Cir.1992); *accord Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–65, 95 L.Ed. 456 (1951). Legal judgments of the Board are examined to determine whether the Board "correctly interpreted and applied the law." *Le'Mon v. NLRB*, 952 F.2d 1203, 1206 (10th Cir.1991) (internal quota-

---

**2.** Under Bastian, 100% of the production employees had been members of the union.

**3.** The Board also ruled that Cypher–Jones had improperly failed to rehire several former Bas-

tian employees because those individuals had filed charges with the Board. Cypher–Jones has not contested that ruling in this appeal.

tion omitted), *cert. denied,* — U.S. —, 113 S.Ct. 93, 121 L.Ed.2d 55 (1992).

When, as here, the Board rejects the ALJ's finding, the ALJ's report becomes part of the record on appeal, *see Monfort,* 965 F.2d at 1541, but the standard of review of the Board's determination "is not modified in any way." *Universal Camera,* 340 U.S. at 496, 71 S.Ct. at 469. Nonetheless, "evidence supporting [the Board's] conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion." *Id.; see also Monfort,* 965 F.2d at 1541. If the Board rejects the ALJ's findings concerning credibility of witnesses or evidence, the Board must have substantial justification apparent from the record; however, if it has merely drawn inferences from the established facts contrary to those of the ALJ, or has construed the applicable law differently, the Board's rejection of the ALJ's conclusions is less significant. *See NLRB v. Frigid Storage, Inc.,* 934 F.2d 506, 509 (4th Cir.1991); *Texas World Serv. Co. v. NLRB,* 928 F.2d 1426, 1431 (5th Cir.1991).

### III

In *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987), the Supreme Court reiterated its approval of the Board's approach to determining successor status for purposes of union recognition and nego-

tiation. The Board's inquiry "is primarily factual in nature and is based upon the totality of the circumstances," *id.* at 43, 107 S.Ct. at 2236. It focuses on whether there is " 'substantial continuity' between the enterprises," and requires the examination of a number of factors:

> [W]hether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

*Id.* In making this determination, the Board "keeps in mind the question whether 'those employees who have been retained will understandably view their job situations as essentially unaltered.' " *Id.* (quoting *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 184, 94 S.Ct. 414, 425, 38 L.Ed.2d 388 (1973)). Thus, the key to the successor analysis is the perspective of the employee; if the employees' jobs have not been significantly modified by the change in ownership, then the new owner is required to recognize and bargain with the authorized representative of the appropriate bargaining unit,[4] absent other factors that would indicate a discontinuity in operations.

In this case the ALJ and the Board agreed that the *Fall River* criteria for successor status were met, and there is substantial evidence in the record to support that conclusion.[5] The employees at Cypher–Jones were performing the same

---

**4.** Because Local 948 was the certified representative of the Nephi plant workers, and because a majority of Cypher–Jones' employees were former employees of Bastian, a presumption of continuing majority support for the union attaches, and the employer must either recognize the union or challenge the presumption. *Premium Foods, Inc. v. NLRB,* 709 F.2d 623, 627 (9th Cir.1983). However, "the successor is not bound by the predecessor's bargaining agreement and is free to negotiate his own contract." *International Union of Elec., Radio & Machine Workers v. NLRB,* 604 F.2d 689, 693 (D.C.Cir. 1979). Although more than a year had passed between the certification of Local 948 and the reopening of the plant, the union is still entitled to a rebuttable presumption of support. *NLRB*

*v. Curtin Matheson Scientific, Inc.,* 494 U.S. 775, 778, 110 S.Ct. 1542, 1544, 108 L.Ed.2d 801 (1990). Cypher–Jones makes no attempt to rebut this presumption; rather, it argues that because of the discontinuity of operations, it need not recognize the previous union as the bargaining representative for its employees.

**5.** The ALJ analyzed the differences between Cypher–Jones and Bastian under the criteria of *Border Steel Rolling Mills, Inc.,* 204 N.L.R.B. 814 (1973). Although the precise wording is different, the language is substantially similar to that approved in *Fall River* and *NLRB v. Burns Int'l Security Servs., Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972).

jobs under the same conditions and supervisors as they had with Bastian. The machinery and production methods were essentially unchanged. The calculation of pay was different, and the overall rate was somewhat less, but the nature of the work remained substantially the same. Both Cypher–Jones and Bastian engaged in the business of manufacturing industrial rubber hose used in mining and oil exploration. The record reveals that Cypher–Jones eventually changed its product mix, but those changes came primarily in 1986 and beyond, well after the union demand for recognition.[6] Furthermore, "changes in the product mix do not preclude a continuity finding if the basic job skills remain the same." *Capital Steel & Iron Co.,* 299 N.L.R.B. No. 61, at 6 (Aug. 17, 1990). Cypher–Jones did modify its sales methods and marketing approach, but these factors are also less significant than the impact on the employees. *See id.* at 5 ("[C]hanges in such matters as marketing, sales or customers' modes of payment have little weight in comparison with factors directly affecting the employees' daily performance of their jobs.").

The determinative issue in this case is whether the sixteen-month hiatus of operations at the plant and the intervening bankruptcy of Bastian so affected employee attitudes concerning representation as to overcome a finding of substantial continuity once Cypher–Jones reopened the plant. The ALJ found this to be the case, citing a number of Board rulings holding that such a hiatus did in fact destroy the continuity necessary for a finding of successor status.[7] The Board rejected the ALJ's reasoning, finding those cases to be distinguishable,[8] and that here the returning employees found their job situation essentially unchanged.

■ This court has recently considered the effect of a hiatus of operations on a finding of successor status. In *Coastal Derby Refining Co. v. NLRB,* 915 F.2d 1448 (10th Cir.1990), we held that when there has been a hiatus between the closing of an enterprise and its reopening, "[t]he relevant inquiry is whether the hiatus was of such length as to call into question the likelihood that former ... employees viewed their current jobs as essentially unchanged." *Id.* at 1453. In *Fall River,* the Supreme Court found a seven-month hiatus of operations not to be determinative: "[S]uch a hiatus is only one factor in the 'substantial continuity' calculus and thus is relevant only when there are other indicia of discontinuity." 482 U.S. at 45, 107 S.Ct. at 2237. In this case, such indicia of discontinuity are present. Bastian filed for bankruptcy and eventually gave up any

---

**6.** For purposes of determining when a successor employer's obligation to bargain with an existing union arises, the Board follows the "substantial and representative complement" rule. Under that approach, the Board examines "whether the job classifications designated for the operation were filled or substantially filled and whether the operation was in normal or substantially normal production," *Premium Foods,* 709 F.2d at 628, and "takes into account the size of the complement on that date and the time expected to elapse before a substantially larger complement would be at work, as well as the relative certainty of the employer's expected expansion." *Id.* (citation omitted). In this case, on the date of the union's demand for recognition, Cypher–Jones had 53 employees. Nine months later, it employed 63 individuals. It is clear that Cypher–Jones had acquired a substantial and representative complement of its work force on the date of the demand, and so analysis of the nature of the company and its production processes is made as of that date.

**7.** *See Blazer Indus.,* 236 N.L.R.B. 103 (1978) (finding no successor status after one year hiatus and intervening bankruptcy); *Cagle's, Inc.,* 218 N.L.R.B. 603 (1975) (same); *Radiant Fashions, Inc.,* 202 N.L.R.B. 938 (1973) (holding that three-month hiatus destroyed continuity); *Gladding Corp.,* 192 N.L.R.B. 200 (1971) (ruling that two-month hiatus, along with other factors, precluded finding of continuity); *see also United Food & Commercial Workers Int'l Union v. NLRB (Spencer Foods, Inc.),* 768 F.2d 1463, 1472 (D.C.Cir.1985).

**8.** There are a number of cases in which a hiatus was held not to destroy successor status. *See Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 45, 107 S.Ct. 2225, 2237, 96 L.Ed.2d 22 (1987) (seven-month hiatus); *NLRB v. Phoenix Pipe & Tube, L.P.,* 955 F.2d 852, 857 (3d Cir. 1991) (fourteen-month hiatus); *Spencer Foods,* 768 F.2d at 1472–73 (sixteen-month hiatus); *Capital Steel & Iron Co.,* 299 N.L.R.B. No. 61, at 7–8 (Aug. 17, 1990) (eight-month hiatus); *Inland Container Corp.,* 275 N.L.R.B. 378 (1985) (two-and-one-half-month hiatus).

attempt to reorganize and reopen the plant; throughout the hiatus period, a number of corporations considered but rejected purchasing the plant; the ESOP attempt, although it made progress, never convinced the bankruptcy court of its viability; and a liquidation of the assets of the plant had been ordered, and the equipment inside the plant was tagged for an asset auction that was narrowly averted. Thus, the hiatus period is relevant to the continuity inquiry in this case.

■■ The Board appeared to focus primarily on the similarities between the jobs of the employees under Bastian and Cypher–Jones, finding that they outweighed any negative effects on employee attitudes toward representation caused by the hiatus. But it also commented on the employees' activities and expectations during the hiatus relevant to a totality of the circumstances analysis. In rejecting the ALJ's findings the Board stated the following about union members' activities during the period the plant was closed:

> We disagree with the judge's finding concerning absence of union representation during the hiatus. During this period, union funds and much of the energies of the Union's president were devoted to supporting formation of the ESOP and its effort to reopen the plant. The record reflects that, during this period, union representatives also met with employees, filed required reports, sent newsletters to employees, telephoned and wrote letters to employees, and pursued the issue of Bastian's pension obligations to the employees. Although there may have been less union activity during this period than there had been when the plant was in operation, there was continued union representation.

*Nephi Rubber Prods. Corp.*, 303 N.L.R.B. No. 19, at 6 n. 11. The evidence in the record supports the conclusion that throughout the hiatus period the employees, all of whom were members of the union, were working to reopen the plant and to get their jobs back.

The ESOP project, developed shortly after the August 1985 plant closure, attempt-ed to obtain financing to purchase the plant up to the day the bankruptcy court approved the sale to Cypher–Jones. The record does reflect, as argued by Cypher–Jones, that not all employees thought the ESOP would succeed. Nevertheless, the dissention concerned whether to pursue the ESOP in the face of the Cypher–Jones offer, not whether to abandon hope of reviving the plant altogether. The continuing efforts by the former employees of Bastian to secure the reopening of the plant, coupled with the substantial similarities between the former and current jobs of the employees, demonstrate that, considering the totality of the circumstances, there has not been "an essential change in the business that would have affected employee attitudes toward representation." *NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 464 (9th Cir.1985) (internal quotation omitted). Therefore, although the hiatus period is relevant to the continuity determination in this case, it does not overcome the finding that the nature of operations after reopening indicates a substantial continuity between jobs as viewed by the employees.

The finding of successor status for Cypher–Jones is supported by substantial evidence in the record as a whole. The petition of Cypher–Jones is therefore DENIED, and the order of the Board is hereby ENFORCED.