**GUARDIAN INDUSTRIES CORP.,**
Petitioner, Cross–Respondent,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent, Cross–
Petitioner.**

Nos. 94–2388, 94–2664.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1995.

Decided Feb. 28, 1995.

Todd M. Nierman (argued), Michael R. Maine, Baker & Daniels, Indianapolis, IN, for petitioner.

Charles P. Donnelly, Jr., Joseph Oertel (argued), N.L.R.B., Contempt Litigation Branch, Aileen A. Armstrong, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, Saudria Bordone, Joanne Krause, N.L.R.B., Region 25, Indianapolis, IN, for respondent.

Before COFFEY and EASTERBROOK, Circuit Judges, and McDADE, District Judge.*

EASTERBROOK, Circuit Judge.

During an organizational campaign, supporters of the union asked management to post notices of union meetings on the firm's bulletin board. The employer refused, and the NLRB held that this decision violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), because it interfered with self-organization and other concerted activities protected by § 7 of the Act. According to the Administrative Law Judge, whose opinion the Board adopted, whenever the employer permits employees the slightest access to a bulletin board, it must permit the posting of union notices; anything else is forbidden "discrimination" against the employees' right to organize. Guardian Industries will post, on employees' behalf, anony-mous 3 × 5 cards announcing items such as used cars for sale. Having extended employees this limited, indirect access to the bulletin board, the Board found, Guardian Industries necessarily committed itself to post notices of union meetings.

We start from the proposition that employers may control activities that occur in the workplace, both as a matter of property rights (the employer owns the building) and of contract (employees agree to abide by the employer's rules as a condition of employment). *Lechmere, Inc. v. NLRB,* 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992); *Eastex, Inc. v. NLRB,* 437 U.S. 556, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978). This has led the Supreme Court to state that the NLRA "does not command that labor organizations ... are entitled to use a medium [of communications in the workplace] simply because the employer is using it." *NLRB v. Steelworkers Union,* 357 U.S. 357, 364, 78 S.Ct. 1268, 1272, 2 L.Ed.2d 1383 (1958). Section 7 of the Act protects organizational rights—including the right to oppose the union's campaign—rather than particular means by which employees may seek to communicate. Just as the right of free speech and association in the political marketplace does not imply that the government must subsidize political parties by distributing their literature without charge or giving them billboards on public buildings, so the right of labor organization does not imply that the employer must promote unions by giving them special access to bulletin boards. *NLRB v. Honeywell, Inc.,* 722 F.2d 405, 406 (8th Cir. 1983); *Container Corp. of America,* 244 N.L.R.B. 318, 318 n. 2 (1979), enforced in relevant part, 649 F.2d 1213 (6th Cir.1981). What the employer (like the state in political matters) may not do is discriminate against speech and organizational efforts, making them more costly than they would be if the employer left the employees to their own devices. *NLRB v. Magnavox Co.,* 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974); *NLRB v. Methodist Hospital of Gary, Inc.,* 733 F.2d 43, 47 (7th Cir.1984); *National By-Products, Inc. v. NLRB,* 931 F.2d 445, 452–

* Hon. Joe Billy McDade, of the Central District of Illinois, sitting by designation.

53 (7th Cir.1991). This antidiscrimination principle is the basis of the Board's rule that giving the employees *any* access to a bulletin board requires the employer to accept notices relating to labor organization. *Honeywell,* 722 F.2d at 406; *Union Carbide Corp. v. NLRB,* 714 F.2d 657 (6th Cir.1983); *St. Anthony's Hospital,* 292 N.L.R.B. 1304, 1307 (1988).

■ Discrimination is a form of inequality, which poses the question: "equal with respect to *what?*". A person making a claim of discrimination must identify another case that has been treated differently and explain why that case is "the same" in the respects the law deems relevant or permissible as grounds of action. See generally Peter Westen, *Speaking of Equality: An Analysis of the Rhetorical Force of "Equality" in Moral and Legal Discourse* (1990). The event comparable to the announcement of a union meeting, according to the Board, is the index card offering a fellow employee the opportunity to buy a newly born puppy. Yet in what respects are for-sale notices and bulletins of organizational meetings "the same"? It would be much easier to say that if the employer uses the bulletin board to call a meeting at which managers will denounce the union, then it is discriminatory not to let union adherents have equal space and equal time; yet an employer may announce assemblies to be held on company time, while requiring union supporters to meet on their own time. *May Department Stores Co. v. NLRB,* 316 F.2d 797 (6th Cir.1963). If that is so, then it is hard to see why allowing employees to tell each other about cribs that have been outgrown implies that the employer must dedicate space to the union's organizational notices.

At the time the union's supporters sought to put up announcements of meetings, the company did not allow any employee placards except what it calls swap-and-shop notices. Some years ago, it allowed two announcements of weddings and two of fundraising events for employees stricken by illness. The Board does not contend that broad-sides for such events were still being posted by the time the organizational campaign began—and it does not say that the employer stopped allowing them in order to curtail claims by unions for access, which might imply a forbidden animus. Guardian Industries does not now, and apparently never did, allow general announcements of meetings. The Boy Scouts, the Kiwanis, the VFW, the Red Cross, the United Way, the employee credit union, local schools and churches—and meetings promoting and opposing unions—were and are uniformly excluded from its bulletin board. We therefore must ask in what sense it might be discriminatory to distinguish between for-sale notes and meeting announcements.

Labor law is only one of the many bodies of federal doctrine implementing an antidiscrimination principle. Let us try out the Board's understanding of "discrimination" on some of these other fields. Suppose the Postal Service, a public employer bound by the first amendment, allowed letter carriers to post baby pictures on bulletin boards in the workplace. Would it be "discriminatory" for the Postal Service to decline a request to post a notice of an anti-abortion rally? The schedule of worship services at the local Roman Catholic church? A solicitation by the NAACP seeking donations? Employers may not discriminate against older workers. Would it be age discrimination for Guardian Industries not to post a notice inviting employees to a meeting of the Grey Panthers or the American Association of Retired Persons?

None of these limitations would be "discrimination" in any intelligible sense. In the Postal Service case a court would call the bulletin board a nonpublic forum, which may be confined to particular purposes or kinds of notices without running afoul of the rule that the government may not discriminate against disfavored viewpoints and subject matters. See *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), holding that an employer may limit workplace channels of communication to specific kinds of messages without violating the constitutional prohibition against viewpoint discrimination. Cf. *United States v. Kokinda,* 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); *Lee v. International Society for Krishna Con-*

sciousness, Inc., —— U.S. ——, 112 S.Ct. 2709, 120 L.Ed.2d 669 (1992). Indeed, the Court has held that a public employer may open its internal mail system to communications about civic and church meetings, while keeping it closed to communications on behalf of unions. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). A public body that adopts "a general policy of open access" for advertising display cases (a parallel to bulletin boards) may not exclude ads it finds unpalatable, *Air Line Pilots Ass'n v. Department of Aviation*, 45 F.3d 1144, 1154 (7th Cir.1995); see also *Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Authority*, 767 F.2d 1225 (7th Cir. 1985), but it need not establish open access as its policy and therefore does not discriminate in an unacceptable way if it excludes particular subject-matter from its cases. *Air Line Pilots Ass'n*, 45 F.3d at 1158–60. And in the age case the court would shrug, pointing out that age discrimination means treating persons 40 and over differently from those who are younger; if the employer does not post notices for activities that attract young employees (say, the schedule of the employees' intramural football teams), it does not have to extend favors to older workers.

Courts evaluating claims of discrimination search for disparate treatment and sometimes for disparate impact. A rule distinguishing pro-union organization from anti-union organization would be disparate treatment. A rule banning all organizational notices (those of the Red Cross along with meetings pro and con unions) is impossible to understand as disparate treatment of unions. Perhaps one could see it that way if the employer adopted the rule because of, rather than in spite of, its effect on unions' ability to communicate, see *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979), but the Board did not accuse Guardian Industries of designing its policy to undermine unions; its rules do not single out the sort of messages unions want to post. Some rules for conduct in the workplace have been forbidden because of their disproportionate effect on unions; in *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct.

982, 89 L.Ed. 1372 (1945), for example, the Court held that an employer may not implement an across-the-board non-solicitation policy that effectively prevents unions from communicating with employees. Yet the Board did not conclude in this case that Guardian Industries' policy has such an effect; its opinion uses the language of disparate treatment rather than disparate impact.

Perhaps the Board is wondering: What have all of these cases under the first amendment, the equal protection clause, and the ADEA to do with bulletin boards in the workplace? When pressed with hypothetical questions at oral argument, such as notices of church schedules and Grey Panther meetings, counsel for the Board responded, in essence: "The NLRB lacks jurisdiction over age discrimination and religious discrimination, making these hypotheticals irrelevant." Most of what we have written indeed would be irrelevant, if we were trying to answer the question: "Does the NLRA require employers that post swap-and-shop notices to put up schedules of religious services too?" We have taken what seems to the Board an extended detour because the Board's rule depends on the proposition that once a bulletin board is open to any notices from employees, it is "discrimination" not to accept meeting announcements. The Board asks us to accept an understanding of "discrimination" that has been considered, and found wanting, in every other part of the law that employs that word. The Board is entitled to, and often does, adopt rules that differ from those in other parts of the law. Perhaps "discrimination" ought to have a special meaning under the NLRA, but the Board has not argued that it should. In *Perry* the Supreme Court saw no discrimination in excluding a union from an employer's internal mail system even on the assumption that "some outside organizations such as the YMCA, Cub Scouts, and other civic and church organizations use the facilities." 460 U.S. at 47, 103 S.Ct. at 956. These organizations, the Court thought, are not similar in character to a union. *Id.* at 48, 103 S.Ct. at 956–57. The Board treats the definition of "discrimination" as something obvious. All that we find obvious is that the Board's view is idiosyncratic.

Which is not to say that it lacks support. Two courts of appeals have echoed the Board's position. In *Union Carbide* the sixth circuit wrote: "Where, by policy or practice, the company permits employee access to bulletin boards for any purpose, section 7 of the Act ... secures the employees' right to post union materials." 714 F.2d at 660. See also *Roadway Express, Inc. v. NLRB*, 831 F.2d 1285, 1290 (6th Cir.1987). The eighth circuit uttered similar language in *Honeywell*. But the eleventh circuit has been more skeptical, see *NLRB v. Southwire Co.*, 801 F.2d 1252, 1256 (11th Cir.1986) (enforcing the Board's order while questioning the sweep of its policy). Our circuit has reserved judgment. *Midwest Stock Exchange v. NLRB*, 635 F.2d 1255, 1271 (7th Cir.1980), enforced an order requiring the employer to afford unions access to bulletin boards, but only after finding that the firm had permitted employees to post notices on numerous subjects such as charitable fund-raising events. Whenever the Board cites anti-union discrimination as the basis of its orders, we have required it to establish that the cases among which the employer has distinguished are indeed "similar" in all respects relevant to labor policy, and we have refused to enforce the Board's orders when it falls short. See *NLRB v. Village IX, Inc.*, 723 F.2d 1360, 1369 (7th Cir.1983). Even the Board has its doubts: in *Emerson Electric Co.*, 187 N.L.R.B. 294 (1970), and *Hammary Manufacturing Corp.*, 265 N.L.R.B. 57 (1982), it held that an employer does not "discriminate" against unions by barring labor solicitation on the premises while permitting a few isolated instances of charitable solicitation. Just how the events in cases such as *Emerson Electric* and *Hammary Manufacturing* may be distinguished from the wedding and fund-raising notices Guardian Industries allowed several years ago is a topic the Board did not trouble to discuss. Cf. *Riesbeck Food Markets, Inc.*, 315 N.L.R.B. No. 134 (1994), finding that an employer engages in anti-union discrimination when it allows substantial civic and charitable solicitation but no union solicitation. *Riesbeck* disclaimed any rule that to crack the door open to any solicitation always requires an employer to tolerate labor solicitation;

instead it looked for and found substantial solicitation for organizations other than unions, coupled with a discretionary prior-review policy that the Board took to be a means of filtering out pro-union literature. If this is the Board's preferred analysis of solicitation rules, why a different approach to bulletin board rules?

None of the appellate opinions singing the Board's tune discusses *Perry*, and the Board itself has been conspicuously silent about that decision. We have some doubt whether even the sixth and eighth circuits would match their holdings to the breadth of their language. None of the cases we have found used swap-and-shop notices as the foundation for an obligation to post union notices. In each of these cases the employer had opened its bulletin board to notices concerning some organizational meetings. In *Union Carbide*, for example, the Board concluded that the employer tolerated notices for *anything* except unions: "there was no evidence of policing the bulletin boards by [the employer] except for the removal of the union's meeting notices". 259 N.L.R.B. 974, 976 (1981). That is anti-union discrimination by anyone's definition, and the case accordingly did not require the court to decide whether the Board's understanding of "discrimination" is permissible. In *Roadway Express* the employer took down a bulletin board that employees had begun to use to post union announcements, and the Board inferred anti-union animus. In *Honeywell* the employer maintained two bulletin boards: one contained notices for company-sponsored organizations and activities, and the other contained employees' notices for work-related activities—except for unions. The employer lumped unions with churches as "non-work" activities for which postings were forbidden. The upshot was that everything related to life in the workplace except for unions found a place on one or another bulletin board, and again it was unnecessary to decide whether to accept the Board's understanding of discrimination. Today's case appears to be the first in which the Board has taken its own definition to the logical limit. It has gone too far. Distinguishing between for-sale notices and announcements of all meetings, of all

organizations, does not discriminate against the employees' right of self-organization.

None of this is to deny that the Board could create a rule that does not depend on the idea of "discrimination." The Board has a good deal of latitude to adopt rules adjusting the balance between labor and management. *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990). We have mentioned *Republic Aviation*, where the Supreme Court accepted the Board's conclusion that nondiscriminatory regulation of solicitation in the workplace may diminish to an unacceptable degree employees' ability to communicate with each other about organization. How far the Board may move in this direction is debatable. In *NLRB v. Stowe Spinning Co.*, 336 U.S. 226, 232–33, 69 S.Ct. 541, 544, 93 L.Ed. 638 (1949), the Court declined to enforce an order requiring an employer to make its meeting hall available to a union; the Board might legitimately bar discrimination against unions, the Court said, but could not require the employer to prefer unions over other potential users. We need not pursue this question, because the Board has not justified its decision as necessary to ensure employees a minimum adequate opportunity to communicate with one another. Union organizational meetings were held among Guardian Industries' employees before anyone sought to post notices on the bulletin board. Organizers notified employees by leaflet without hindrance from Guardian Industries. Attendance had been shrinking for reasons unrelated to any change in bulletin board access. A court must assess an agency's stated rationale. *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The only ground the Board gave here, the antidiscrimination principle, is inadequate to support its order.

In addition to commanding Guardian Industries to change its bulletin board access policy, the Board directed the employer to cease threatening union adherents with unemployment. The latter portion of the order responds to an incident in which supervisor Marcia Osterhout told employee Butch Kinsey, who was wearing a UAW pin, that "if we

got a union in there we'd be in the unemployment line." Such an unqualified statement—which employees may hear as a threat rather than a balanced assessment of the consequences of unionization—violates the NLRA. See *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 619–20, 89 S.Ct. 1918, 1942–43, 23 L.Ed.2d 547 (1969); *Central Transport, Inc. v. NLRB*, 997 F.2d 1180, 1190 (7th Cir.1993); *Northern Wire Corp. v. NLRB*, 887 F.2d 1313, 1317–18 (7th Cir.1989). It denies, however, that Osterhout made such a statement. (It also observes that Kinsey did not relay the statement to other employees and that Osterhout spoke without approval from higher management, but the NLRA regulates all of the employer's acts, not just those that have approval at the highest levels.)

Much of Guardian Industries' presentation on this subject confuses the standards applicable to coercive interrogation with those applicable to threats. Conversations between employees and supervisors do not violate the Act, and an interrogation becomes coercive only when it would coerce reasonable employees and so interfere with their exercise of organizational rights. *NLRB v. Berger Transfer & Storage Co.*, 678 F.2d 679, 689 (7th Cir.1982); *NLRB v. Ajax Works, Inc.*, 713 F.2d 1307, 1313–14 (7th Cir.1983). Guardian Industries believes that Kinsey had more fortitude than the ALJ gave him credit for and would not have been intimidated by Osterhout's statements. Maybe so, if the question were whether Osterhout conducted a coercive interrogation. Reasonable employees do not quake in fear at ordinary banter and routine questions. See *NLRB v. Thill, Inc.*, 980 F.2d 1137, 1139–41 (7th Cir. 1992). But if the issue is the one the Board framed—whether the supervisor threatened Kinsey (and by implication other workers) with unemployment if the union prevailed— then the only question is whether Osterhout indeed said what the Board found she did.

Osterhout testified that instead of threatening *Kinsey* with unemployment, she told Kinsey that *she* would not be working at Guardian Industries if the union won, for she does not want to work in a unionized plant. The administrative law judge "credit-

ed Kinsey's recollection of the conversation, because his demeanor impressed me as more certain and unequivocal". Perhaps the ALJ has confused certitude with certainty; candor often requires us to admit that we cannot recollect with precision conversations in years (or even days) past. Whether or not the ALJ came to the best conclusion, however, he was the right person to make the decision. An appellate court may not set aside the factfinder's resolution of a swearing match unless one of the witnesses testified to something physically impossible or inconsistent with contemporary documents. See *Anderson v. Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). The ALJ, who disbelieved Kinsey's recollection of another encounter with Osterhout, did not exceed permissible bounds in accepting Kinsey's testimony about this exchange. The Board is entitled to credit the testimony of those it considers perjurers. *ABF Freight System, Inc. v. NLRB,* —— U.S. ——, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994). It was entitled to credit Kinsey's, too. See *NLRB v. Walton Manufacturing Co.,* 369 U.S. 404, 406–09, 82 S.Ct. 853, 854–56, 7 L.Ed.2d 829 (1962); *NLRB v. Del Rey Tortilleria, Inc.,* 787 F.2d 1118, 1121 (7th Cir.1986); *NLRB v. Harrison Steel Castings Co.,* 728 F.2d 831, 836 n. 9 (7th Cir.1984).

The Board's order is enforced to the extent it requires Guardian Industries to desist from threatening union adherents with unemployment. We deny the Board's petition to enforce the remainder of the order and grant Guardian Industry's petition to set that portion of the order aside.