**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

FOUR B CORP., doing business as
Price Chopper,

     Petitioner/Cross-Respondent,

     v.

NATIONAL LABOR RELATIONS
BOARD,

     Respondent/Cross-Petitioner,

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

UNITED FOOD AND COMMERCIAL
WORKERS UNION, LOCAL 576,
affiliated with United Food and
Commercial Workers International
Union, AFL-CIO, CLC "Local 576",

     Intervenor.

No. 97-9577

## ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD (NOS. 17-CA-17232 and 17-CA-17299)

John D. Dunbar (Kelly S. May Moothart with him on the briefs), Daniels &
Kaplan, P.C., Kansas City, Missouri, for petitioner/cross-respondent.

Fred L. Cornnell (Frederick L. Feinstein, Acting General Counsel, Linda Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, with him on the brief), National Labor Relations Board, Washington, D.C., for respondent/cross-petitioner.

David M. Silberman, Bredhoff & Kaiser, Washington, D.C. (Laurence Gold, Bredhoff & Kaiser, Washington, D.C.; James Coppess, Lynn Rhinehart, Washington, D.C.; Peter J. Ford, Washington, D.C.; Robert J. Henry, Blake & Uhlig, Kansas City, Kansas, with him on the brief), for intervenor.

---

Before ANDERSON, HENRY, and MURPHY, Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

Four B Corp. d/b/a/ Price Chopper ("Price Chopper"), an operator of retail grocery stores, petitions to set aside the decision and order of the National Labor Relations Board, which reversed the decision of the administrative law judge ("ALJ") and found that Price Chopper violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). The Board found that Price Chopper discriminated against the intervenor in this case, United Food and Commercial Workers Union, Local 576 ("Union"), by prohibiting representatives of the Union from soliciting and distributing materials to off-duty employees at two of Price Chopper's stores while permitting non-union solicitations and distributions at those stores. The Board cross-petitions for enforcement of the order. Because we find that the Board's conclusions and factual findings are supported by substantial

evidence, we deny Price Chopper's petition for review and grant the Board's cross-petition for enforcement of the order.

## BACKGROUND

At the time relevant to this case, Price Chopper operated 21 retail grocery stores in the greater Kansas City area. This case involves the Price Chopper stores in Roeland Park, Kansas, and in Grandview, Missouri.

Price Chopper had a written no-solicitation policy effective December 1, 1993, which provided as follows:

> In the interest of efficiency, convenience and the continuing good will of our customers, and for the protection of our team members, there must be no solicitation or distribution of literature of any kind by any team member during the actual working time of the team member soliciting or the team member being solicited.
>
> Persons who are not Company team members may not solicit or distribute literature for any purpose in any customer service area, working area or any area restricted to Company team members.
>
> There must be no solicitation or distribution of literature of any kind by persons in customer service areas or shopping areas of the store during those hours when the store is open for business.

Joint Ex. 1, R. Vol. II. A copy of this policy was available in the office of both the Roeland Park and Grandview stores, and both stores posted "No Solicitation" signs.

On February 18, 1994, both stores were the target of what Price Chopper describes as a "Union organizational blitz." The ALJ found as follows:

> On February 18, 1994 Union agents entered Price Chopper's Roeland Park and Grandview stores and began soliciting employees and distributing union literature to employees while they were working and assisting customers. Management told the agents to leave, and after the agents left, management found the stores littered with union literature. At the Roeland Park store, Store Director [Andy] Staley and a security guard escorted Gerald Meszaros (a lay minister and a volunteer agent for the Union) from the store.

Four B Corp. d/b/a Price Chopper, 1996 NLRB LEXIS 190, at *8-9 (April 1, 1996). Ms. Staley informed Mr. Meszaros that he would have to distribute any Union literature off the store's property and outside the parking lot. Approximately six weeks later, Grandview store director Robert C. Scott told the same thing to union representatives who came to the store wishing to speak to employees in front of the store or in the parking lot. Thus, Union representatives were prohibited from soliciting and distributing to off-duty Price Chopper employees on the sidewalks and parking lots outside the Roeland Park and Grandview stores.

Both stores had, however, permitted other groups to solicit on site. The Board described the prior solicitations as follows:

> [Price Chopper] allowed the Salvation Army to solicit at both its Roeland Park and Grandview stores on a daily basis between Thanksgiving and Christmas 1993. The Shriners were permitted to solicit contributions in support of their circus and rodeo at both stores during 1993; the organization's representatives appeared at the

Roeland Park store three to four times a week for a period of 3 to 4 months, and at the Grandview store one weekend per month for an equivalent period. Also in 1993, a community group sold tickets for a pancake supper at the Roeland Park store on one occasion, and a Cub Scout pack sold mugs or cups to raise money at the Grandview store on one occasion.

Four B Corp. d/b/a Price Chopper, 325 N.L.R.B. No. 20, 1997 NLRB LEXIS 946 at *12-13 (Nov. 8, 1997). Additionally, there was evidence that on two prior occasions, non-Union groups attempting to solicit Price Chopper employees at both stores were denied access. In late February or early March of 1994, Price Chopper's management informed the store directors that the no-solicitation policy would have to be strictly enforced. Since that time, no solicitation by anyone, including the Salvation Army and the Shriners, has been permitted.

## I. Proceedings Before the ALJ

The Board's General Counsel filed a complaint, alleging that Price Chopper selectively and disparately enforced its no-solicitation policy to prohibit Union solicitations while permitting non-Union solicitations, thereby interfering with, restraining and coercing employees in the exercise of their rights under section 7 of the NLRA, 29 U.S.C. § 157, in violation of section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1). Following a hearing, the ALJ dismissed the complaint, finding no violation of section 8(a)(1). He reasoned that the prior solicitations Price Chopper had permitted were of its *customers*. By contrast, the Union was

- 5 -

attempting to solicit the stores' *employees* . He thus found no disparity between permitting non-Union solicitations of store customers and denying Union solicitation of employees.

## II. Proceedings Before the Board

The General Counsel and the Union filed exceptions to the ALJ's decision. The Board, with one member dissenting, disagreed with the ALJ and held that Price Chopper "violated Section 8(a)(1) by discriminatorily excluding the union representatives from soliciting and distributing to off-duty employees on the sidewalks and parking lots of its Roeland Park and Grandview facilities." Price Chopper , 325 N.L.R.B. at ___, 1997 NLRB LEXIS 946 at *15.

The Board began by rejecting the ALJ's factual finding that the non-Union solicitations permitted by Price Chopper were directed at customers only:

> We note initially that the record does not support the judge's finding that the nonunion solicitations [Price Chopper] had permitted on its premises were directed at its customers instead of its employees. No witness testified that the nonunion organizations limited their solicitations to customers. Indeed, most of the solicitation activity was engaged in by groups that generally accept donations from anyone passing by. Moreover, much of this solicitation took place at or near store entrances, where employees would normally be expected to enter and leave the stores.

Id. at *4 (footnote omitted).

The Board then held that, even if the Union and non-Union solicitations were directed at different groups, it would still find discrimination against the Union in violation of section 8(a)(1), because permitting non-Union solicitation on site while denying all Union access to off-duty employees amounts to discrimination against *Union* solicitation, regardless of audience. The Board inferred the existence of a "discriminatory motive" from the fact that Price Chopper's written no-solicitation policy does not even address the Union's solicitation efforts in this case. [1] "[W]e think that when an employer, like [Price Chopper], has a published rule prohibiting solicitation under stated circumstances, and excludes a union from its property under materially different circumstances in which no other outside organization has been excluded, it is fair to infer, as we do here, that a discriminatory motive lies behind the exclusion." Id. at *11.

The Board rejected Price Chopper's argument that the non-Union solicitation it permitted was insignificant enough to qualify for the "beneficial acts" exception to the discrimination prohibition of section 8(a)(1). It also rejected Price Chopper's argument that it was justified in excluding Union

[1]As the Board correctly noted, the policy forbids solicitations and distributions between employees during working time, by non-employees in customer service areas, working areas or areas restricted to employees, and by anyone in customer service areas or shopping areas during business hours. It says nothing about non-employees like the Union representatives soliciting and distributing to off-duty employees on the parking lots and sidewalks outside the stores.

representatives because of their disruptive behavior during the "organizational blitz" on February 18, 1994, finding that "[n]o witness indicated that the asserted misconduct played any part in the decision to exclude the union representatives from the sidewalks and parking lots." Id. at *14. Finally, it rejected Price Chopper's argument that it was justified in excluding the Union representatives because they failed to first ask permission, finding that "[n]o witness testified that the Union's representatives were told that they were being denied access to [Price Chopper's] outside nonwork areas because they had not first asked permission." Id. at *15.

The Board accordingly entered an order directing Price Chopper to cease and desist from discriminatorily prohibiting Union representatives from communicating with Price Chopper's off-duty employees on the sidewalks and parking lots adjacent to the Roeland Park and Grandview stores, and, affirmatively, to post a remedial notice and to allow Union representatives to communicate with off-duty employees during the 60-day notice posting period.

One Board member dissented, arguing that Price Chopper did not discriminate against employees "based on Section 7 considerations. . . . Where, as here, [Price Chopper] differentiated between appeals to customers and appeals to employees, it cannot be said that [Price Chopper] unlawfully discriminated where, as here, all employees were treated alike (on and off duty)." Id. at *19, 22

(dissenting opinion). In response to the majority's view that the customer/employee distinction was irrelevant, or meaningless, because the non-Union groups solicited anyone who passed by, the dissent observed:

> [T]here is no evidence that the nonunion groups solicited any employees. As the prosecutor of a "discrimination" allegation, the General Counsel had the burden of proof to show disparate treatment, and he did not meet that burden here. Further, even assuming arguendo that the evidence established that nonunion groups solicited off-duty employees, the result would be the same. The nonunion groups were not soliciting employees qua employees. They were soliciting anyone who passed by. By contrast, the union agents here were soliciting employees qua employees.

Id. at *23 (footnote omitted). Because Price Chopper's policy would permit Union solicitation of *customers*, and because the Union and the General Counsel failed to show that such Union solicitation of *customers* had ever been denied, the dissent opined that no discrimination existed.

### III. This Petition

In this petition, Price Chopper argues the Board erred in finding, contrary to the ALJ, that it violated section 8(a)(1) because: 1) prior to the Union's attempts to solicit, few other groups had been permitted to solicit and "then for a limited solicitation purpose upon asking permission which would not void [Price Chopper's] no-solicitation policy;" 2) no other groups had been permitted to solicit Price Chopper employees; 3) Price Chopper had previously denied other

- 9 -

groups requests to solicit; 4) the conduct of Union representatives on February 18 justified the subsequent denial of their solicitation request; and 5) no solicitations at all have been permitted since late February or early March 1994. Pet'r's Br. at 4.

We resolve this case on its facts, not on legal distinctions. We hold that substantial evidence supports the Board's finding that Price Chopper discriminated against the Union when it prohibited Union representatives from soliciting off-duty employees in the parking lots and sidewalks outside the two Price Chopper stores.

## DISCUSSION

We have stated before our standard of review for the Board's orders: "while we review legal determinations de novo, our standard for reviewing factual determinations is governed by 29 U.S.C. § 160(e), which states that 'findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive.'" Medite of New Mexico, Inc. v. NLRB, 72 F.3d 780, 785 (10th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); see also Medite of New Mexico, 72 F.3d at 785. Accordingly, if supported by

substantial evidence, we must affirm the Board's conclusions "even though we might reach a different result were we reviewing the record de novo." Medite of New Mexico, 72 F.3d at 785. Our standard of review does not change because the ALJ and the Board have reached different conclusions. Id.; see also Nephi Rubber Prods. Corp. v. NLRB, 976 F.2d 1361, 1364 (10th Cir. 1992). The record nonetheless includes the ALJ's findings, "'whether they contradict or support the Board's determination.'" Medite of New Mexico, 72 F.3d at 785 (quoting Harberson v. NLRB, 810 F.2d 977, 983 (10th Cir. 1987)).

We review the Board's legal judgments "to determine whether the Board 'correctly interpreted and applied the law.'" Nephi Rubber Prods., 976 F.2d at 1363-64 (quoting Le'Mon v. NLRB, 952 F.2d 1203, 1206 (10th Cir. 1991)). However, to the extent the Board is interpreting and applying the NLRA, we must accord its interpretation some deference: "[f]or the Board to prevail, it need not show that its construction is the best way to read the statute; rather, courts must respect the Board's judgment so long as its reading is a reasonable one." Holly Farms Corp. v. NLRB, 517 U.S. 392, 409 (1996).

Section 7 of the NLRA guarantees employees "the right to self-organization, to form, join, or assist labor organizations, . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157. Section 8 makes it an unfair labor

practice "to interfere with, restrain, or coerce employees in the exercise of" their section 7 rights. 29 U.S.C. § 158(a)(1); see Albertson's, Inc. v. NLRB, No. 97-9509, slip op. at 8-9 (10th Cir. Nov. 10, 1998).

"As a rule, . . . an employer cannot be compelled to allow distribution of union literature by nonemployee organizers on his property." Lechmere, Inc. v. NLRB, 502 U.S. 527, 533 (1992). There are two exceptions to this general rule. First, an employer violates section 8(a)(1) if it prohibits union access to the employer's property if the employees are otherwise "inaccessible" because they are "'beyond the reach of reasonable union efforts to communicate with them.'" Id. at 534 (quoting NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 112 (1956)). [2] Second, an employer may not discriminate in violation of section 8(a)(1) by denying "union access to its premises while allowing similar distribution or solicitation by nonemployee entities other than the union." Lucile Salter Packard Children's Hosp. v. NLRB, 97 F.3d 583, 587 (D.C. Cir. 1996); see also Babcock, 351 U.S. at 112; Albertson's, Inc., slip op. at 9. This case involves this second non-discrimination exception.

Under the non-discrimination exception, "[a]n employer may not exercise its usual right to preclude union solicitation and distribution on its property if the

_____

[2]All parties seem to agree that the inaccessibility exception is not relevant to this case.

- 12 -

employer permits similar activity by other nonemployee entities 'in similar, relevant circumstances.'" Lucile Salter Packard , 97 F.3d at 587 (quoting Jean Country , 291 N.L.R.B. 11, 12 n.3 (1988)). The Board thus applies a "disparate treatment" analysis to discrimination claims. See Food Lion, Inc. , 304 N.L.R.B. 602, 604 (1991); see also Albertson's, Inc. , slip op. at 9. Accordingly, disparate treatment of similarly situated would-be solicitors, one union and one non-union, will result in a finding of a section 8(a)(1) violation, unless the non-union solicitation falls within one of two exceptions to the non-discrimination rule. Under the first exception, "the employer's decision to permit nonunion solicitation does not violate the provision if the solicitations at issue consist only of 'a small number of isolated "beneficent acts"' that constitute narrow exceptions to the employer's otherwise absolute policy against outsider solicitation." Lucile Salter Packard , 97 F.3d at 587. Under the second exception, allowing non-union solicitations relating "to the employer's business functions and purposes" may avoid violating section 8(a)(1). Id. at 588. Price Chopper relies in part on the "beneficent acts" exception to the non-discrimination rule.

As indicated, the Board first found that the record supported the inference that Price Chopper had a discriminatory motive when it excluded the Union organizers from the sidewalks and parking lots surrounding its two stores. We conclude that substantial evidence in the record supports that finding.

- 13 -

As the Board observed, Price Chopper's written no-solicitation policy does not address the type of solicitation the Union organizers attempted to conduct in this case. The written policy bans solicitations of employees in the store (in customer service areas or working areas or areas restricted to employees) and during business hours. Prior attempts to solicit employees *inside the store and during working hours* were prohibited pursuant to that written policy.[3] However, because the written policy does not address the solicitation of off-duty employees on the sidewalks and parking lots surrounding the stores, Price Chopper's decision to exclude such solicitation by the Union was not in accordance with its written no-solicitation policy.[4]

The Board found as follows with respect to Price Chopper's no-solicitation policy and the decision to exclude the Union representatives:

> [Price Chopper] . . . had, in effect, two policies concerning solicitation. One, the written policy . . . , prohibited all outside entities from soliciting on-duty employees in certain defined areas during specified times. The other, unwritten policy, hastily

---

[3]Ms. Staley, the Roeland Park store director, testified that some people from another retail store, Pace, "came in and actually approached some of our teammates on the checkstands. At the time I was made aware of it, I asked them to leave. Then I went to their office and explained to their human resources director that we did not allow people to approach our teammates on company time." Tr. of Hr'g at 83, R. Vol. I.

[4]The fact that Price Chopper was not following a written policy when it excluded the Union representatives is not, of course, determinative of whether a section 8(a)(1) violation occurred. An employer need not necessarily act in accordance with a written policy.

implemented in the face of the Union's organizing effort, precluded unions from soliciting its employees, whether on duty or off duty, anywhere on its property at any time.

. . . [W]hen an employer, like [Price Chopper], has a published rule prohibiting solicitation under stated circumstances, and excludes a union from its property under materially different circumstances in which no other outside organization has been excluded, it is fair to infer, as we do here, that a discriminatory motive lies behind the exclusion.

Price Chopper, 325 N.L.R.B. at ___, 1997 NLRB LEXIS 946 at *9-11.

"An employer's antiunion motivation often may be proven only by circumstantial evidence." Ready Mixed Concrete Co. v. NLRB, 81 F.3d 1546, 1550 (10th Cir. 1996). Given that "[o]ur review of the Board's factfinding is quite narrow," id. at 1551, we find that substantial evidence in the record supports the Board's finding, based on circumstantial evidence, that Price Chopper had a discriminatory motive when it refused to permit Union representatives to solicit off-duty employees on sidewalks and in the parking lots outside its stores.

Price Chopper argues that it legitimately distinguished between solicitations of employees and solicitations of customers and that, while it permitted the latter, it had never permitted the former, and its refusal to permit the Union representatives to solicit its off-duty employees was merely an implementation of that policy. [5] However, the evidence does not support the existence of any

---

[5]Courts have recognized that employers may make neutral, non-section 7-

(continued...)

coherent or consistent distinction along those lines. Price Chopper's written policy does not itself differentiate among the target audiences of proposed solicitations; rather, it prohibits all solicitations in certain areas and during certain hours. Moreover, the two store managers who excluded the Union representatives did not testify that their decisions were based upon an employee/customer distinction.

Additionally, Price Chopper presented no evidence that there was any other neutral, non-discriminatory reason for adopting this new unwritten policy prohibiting solicitations of off-duty employees on the sidewalks and in the parking lots outside its stores. It presented no evidence that it did so because of concern about disruptive conduct stemming from the behavior of Union representatives on February 18. Nor did it present any evidence that the Union's failure to ask permission caused the activation of this new policy.

---

[5](...continued)
based distinctions between different kinds of solicitations. Thus, the Seventh Circuit has held that an employer could permit the posting of swap-and-shop notices on its bulletin boards, but no notices of any meetings, including union meetings. Guardian Industries Corp. v. NLRB, 49 F.3d 317 (7th Cir. 1995). The Fourth Circuit held that an employer could distinguish between "charitable solicitations which encouraged [the employer's] business activity and the union's do-not-patronize message" which was harmful to the employer's business. Riesbeck Food Mkts, Inc., Nos. 95-1766, 95-1917, 1996 WL 405224 at *4 (4th Cir. July 19, 1996) (unpublished decision).

Rather, the evidence in this case suggests that, after permitting various charitable groups to solicit customers periodically but regularly, Price Chopper banned any solicitation by Union organizers following the Union's organizational efforts. Substantial evidence supports the Board's finding that this ban was motivated by an anti-union animus. We need go no further to find that Price Chopper violated section 8(a)(1) by discriminating in its application of its no-solicitation policy. [6]

## CONCLUSION

For the foregoing reasons, we DENY Price Chopper's petition to set aside the Board's order and we GRANT the Board's cross-petition and ENFORCE the Board's order.

---

[6]Price Chopper argues that, in any event, the number of other non-union groups permitted to solicit in its stores was so small as to fall within the "beneficent acts" exception to the non-discrimination rule. Thus, Price Chopper argues, by permitting a few isolated solicitations, it has not prevented itself from rightfully excluding the Union representatives. The Board found that "the exceptions [Price Chopper] made to its no-solicitation policy were too extensive to enable [Price Chopper] to deny access to the Union on similar terms." Price Chopper, 325 N.L.R.B. at ___, 1997 NLRB LEXIS at *12. We agree with the Board. Given the frequency and duration of the solicitations permitted, Price Chopper cannot claim that they fall within the narrow "beneficent acts" exception. See Lucile Packard Salter, 97 F.3d at 587; Guardian Indus. Corp., 49 F.3d at 321; Hammary Mfg. Corp., 265 N.L.R.B. No. 57 at __ n.4, 1982 WL 23979 at *1.

- 17 -

97-9577, *Four B v. NLRB*

Murphy, J., concurring

I concur in the judgment and, with the exception of footnote 5, the opinion.

Footnote 5 discusses the legal issues raised by an employer's attempt to distinguish between solicitations on facially "neutral, non-section 7-based" grounds, such as Price Chopper's asserted distinction between solicitations of employees and of customers. In text, however, the majority correctly observes that in this case "the evidence does not support the existence of any coherent or consistent distinction" between solicitations of employees and of customers and that "Price Chopper presented no evidence that there was any other neutral, non-discriminatory reason for adopting [its] new unwritten policy prohibiting solicitations of off-duty employees . . . outside its stores." Majority Op. at 16. As a consequence, this panel need not address the hypothetical question of whether that or any other purportedly neutral distinction would violate the NLRA. Complex legal and policy issues inhere in that hypothetical question, the resolution of which Congress and the Supreme Court have entrusted in the first instance to the Board. *See, e.g., Hudgens v. NLRB*, 424 U.S. 507, 522 (1976). This court, then, should only address the question when it becomes real and has first been addressed by the Board. At that point, this court would be bound to defer to any permissible construction of the NLRA by the Board. *See Holly Farms Corp. v. NLRB,* 517 U.S. 392, 398–99, 409 (1996).

Footnote 5, moreover, does not even discuss the purportedly neutral distinction asserted by Price Chopper in this case, i.e., a distinction between target audiences. Rather, i t analogizes to cases distinguishing between types of solicitations. *See Guardian Indus. Corp. v. NLRB,* 49 F.3d 317, 321–22 (7th Cir. 1995); *Riesbeck Food Mkts., Inc. v. NLRB,* Nos. 95-1766, -1917, 1996 WL 405224, at *3–*4 (4th Cir. July 19, 1996) (unpublished disposition). In so doing, footnote 5 cannot even be treated as obiter reflecting favorably upon those cases.

Certainly footnote 5 should not be read as an endorsement, albeit in dicta, of the unpublished *Riesbeck* decision.[7] This panel has not had the benefit of a Board ruling or advocacy on the charitable solicitation issues there presented. Furthermore, *Riesbeck* involved informational solicitation, while this case involves organizational solicitation. Caselaw establishes a hierarchy of activities under section 7, and nonorganizational activity by nonemployees, like that in *Riesbeck*, merits the least protection. *See, e.g., United Food & Commercial Workers v. NLRB*, 74 F.3d 292, 298 (D.C.Cir. 1996); *NLRB v. Great Scot, Inc.*, 39 F.3d 678, 682 (6th Cir. 1994). This distinction has been critical to other courts. In a 1996 case involving nonorganizational solicitation, the Sixth Circuit published an opinion similar to *Riesbeck*. *See Cleveland Real Estate Partners v.*

[7]In the other case cited in footnote 5, the Seventh Circuit simply rejected the Board's inference of union animus from the specific facts presented. *See Guardian Indus. v. NLRB*, 49 F.3d 317, 319–22 (7th Cir. 1995).

*NLRB*, 95 F.3d 457, 464–65 (6th Cir. 1996).  Both the Sixth Circuit, in a later holding, and the Fourth Circuit, in dicta, have since indicated that *Cleveland Real Estate Partners* is limited to nonemployee, nonorganizational cases.  *See Meijer, Inc. v. NLRB,* 130 F.3d 1209, 1212–13 & n.4 (6th Cir. 1997); *Be-Lo Stores v. NLRB,* 126 F.3d 268, 284 (4th Cir. 1997).